GARY M. RESTAINO
United States Attorney
District of Arizona
THEO NICKERSON
Assistant U.S. Attorney
Connecticut State Bar No. 429356
40 North Central Avenue, Suite 1800
Phoenix, Arizona  85004-4449
Telephone:  (602) 514-7500
Facsimile: (602) 514-7693
Email: Theo.Nickerson2@usdoj.gov

*Attorneys for United States of America*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J.P., *et al*.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>United States of America,<br><br>                    Defendant. | No. 2:22-cv-00683-MTL<br><br>**UNITED STATES'<br>MOTION TO DISMISS** |

Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6) for failure to state a claim.  This motion is supported by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs J.P. and L.C. bring this suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), seeking damages based on Plaintiff J.P.'s detention and two-month separation from her daughter, L.C., who was sixteen years of age when they both entered the United States unlawfully near San Luis, Arizona.  The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and committed itself to family reunification.[1]

---

[1] *See* Executive Order on the Establishment of Interagency Task Force on the Reunification

Nevertheless, Plaintiffs' claims should be dismissed for multiple reasons.  First, Plaintiffs' claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which shields the United States from liability for discretionary decision-making relating to the enforcement of federal criminal and immigration law.  Second, Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law, as the governmental actions that resulted in the separation were authorized by federal law.  *Id.*  Third, there is no private analog for Plaintiffs' claims, as required for a waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because Plaintiffs' claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement, which are activities in which only the federal government, and not private parties, may engage.  Fourth, Plaintiffs' claims should be dismissed because the FTCA does not authorize recovery for "constitutional torts" like those Plaintiffs pursue here.  Fifth, Plaintiffs' claims are barred because the FTCA does not waive sovereign immunity for institutional tort claims, such as Plaintiffs' claims here.  Sixth, Plaintiffs' claims are barred because they arise from J.P.'s lawful detention and are therefore not actionable under Arizona law.  Alternatively, Plaintiffs' negligence claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 8(a)(2) and 12(b)(6).

## RELEVANT BACKGROUND

### A.  Legal Framework for Noncitizens Entering the United States

Under the Immigration and Nationality Act ("INA"), any noncitizen present in the United States without being admitted or paroled is inadmissible and subject to removal.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers."  8 U.S.C § 1325.  Noncitizens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by

_____

of Families, Feb. 2, 2021, at https://www.whitehouse.gov/briefingroom/presidential-actions/2021/02/02/executive-order-on-the-establishment-of-interagency-task-force-on-the-reunification-of-families.

immigration officers" to assess the validity of their claims.  *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b).   The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).  Specifically, such individuals "shall be detained pending a final determination of credible fear prosecution and, if found not to have such fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A).  The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis." 8 U.S.C.§ 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii).  The federal government further possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  *See* 8 U.S.C. § 1231(g)(1).

**B.     Legal Framework for Immigration Custody Relating to Minors**

Federal immigration law authorizes the United States to provide for the custody and care of minor children entering the United States.  *See* 6 U.S.C. § 279; 8 U.S.C. § 1232. The Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child."  ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).     However, ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B).

- 3 -

In addition, the federal government entered into a settlement agreement (the *Flores* Agreement)[2] enforced in the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9).  Under the *Flores* Agreement, DHS must expeditiously "transfer the minor to a non-secure, licensed facility[.]" *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12).

Notably, the *Flores* Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, 2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").  Nor does it provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, 2007 WL 1074070, *16 (W.D. Tex. Apr. 9, 2007).  While the *Flores* Agreement gives preference to release of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

**C.   Prior Executive Branch Directives Regarding Immigration Enforcement**

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws.  Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017).   In January 2017, the former President issued Executive Order No. 13767 ("EO 13767"), stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id.* at § 2(b). EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal

---

[2] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

- 4 -

proceedings or their removal from the country to the extent permitted by law[,]" *id.* at § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id.* at § 11(d).  On April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325.[3]

On April 6, 2018, the former Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border."  U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter the "Zero Tolerance Memorandum").  The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS-to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)."  *Id.*  Consistent with EO 13767, and the Zero Tolerance Memorandum, DHS referred for prosecution adult noncitizens – including those traveling with children – who unlawfully entered the United States along the Southwest border in violation of § 1325 or other statutory provisions authorizing criminal prosecution.  Minor children of those adults were transferred to ORR custody as UACs.

**D.   Allegations of Plaintiffs' Complaint**

Plaintiff J.P. and her daughter L.C. are Guatemalan nationals who currently reside in the United States.  *See* Complaint ("Compl.") ¶ 15.  On or around May 16, 2018, Plaintiff J.P. unlawfully crossed the United States border near San Luis, Arizona, with her then sixteen-year-old daughter, L.C., in violation of 8 U.S.C. § 1325.  Compl. ¶¶ 2-4, 14, 52.  Shortly after crossing, Plaintiffs were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol agents and transported to a nearby CBP facility in Yuma, Arizona.

---

[3] *See* U.S. DOJ, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

1    *Id.* ¶¶ 4, 16, 54.

2        Plaintiff J.P. and her daughter L.C. were separated at the CBP facility in Yuma,

3    when J.P. was transferred to the custody of Immigration and Customs Enforcement

4    ("ICE"), as was the practice at the time for noncitizens found to be in the United States in

5    violation of 8 U.S.C. § 1325.  Compl. ¶ 16, 71.  J.P was eventually transferred to the James

6    A. Musick Facility in Irvine, California.  *Id.* at ¶ 71.  Accordingly, her daughter L.C. was

7    transferred to an ORR facility—Southwest Key Casa, in Phoenix, Arizona.  *Id.* at ¶ 65.  J.P.

8    and L.C. were separated from approximately May 20, 2018, through July 16, 2018, for a

9    total of eight weeks.  *Id.* at ¶ 16.

10        Ultimately, J.P. was not prosecuted for violating § 1325 but was placed in removal

11   proceedings.  Compl. ¶ 72.  On July 13, 2018, Plaintiff J.P was ordered released by an

12   immigration judge on $1500 bond.  *Id.* at ¶ 80.   On July 16, 2018, J.P. was released from

13   ICE custody.  *Id.*  On that same date, ORR released L.C. from Southwest Key Casa in

14   Phoenix and facilitated her flight to Burbank, CA to reunite with her mother.  *Id.*  J.P. and

15   L.C. then moved to Florida where they continue to reside and pursue asylum claims.  *Id.* at

16   ¶ 84.

17        On April 25, 2022, Plaintiffs commenced this lawsuit against the United States

18   under the FTCA.  *See generally* Compl.  They assert four causes of action.  *Id.* at ¶¶ 90-

19   104.   First, Plaintiffs seek to recover money damages for the alleged intentional infliction

20   of emotional distress caused by the United States.  *Id. at* ¶¶ 90-92.  Plaintiffs claim the

21   United States is liable for its "extreme and outrageous conduct with an intent to cause, or

22   a reckless disregard of the probability of causing, Plaintiffs to suffer severe emotional

23   distress." *Id.* at ¶ 90.  Second, Plaintiffs seek compensatory damages to redress the alleged

24   negligence of the United States, asserting that by separating the Plaintiffs it "failed to act

25   with ordinary care and breached [its] duty of care owed to Plaintiffs." *Id.* at ¶¶ 93-96.

26   Third, Plaintiff's assert a cause of action for abuse of process, claiming that "the U.S.

27   Government used its immigration detention authority which is incident to the judicial

28   process of removal proceedings for the improper ulterior motive of separating families such

     as Plaintiffs to generate publicity, and for the improper ulterior motive of deterring

Plaintiffs from asserting their rights under U.S. and international law to seek asylum in the United States. *Id.* at ¶ 98. Finally, the Plaintiffs seek to recover under the FTCA for loss of consortium, stating that "the U.S. Government's negligence, which prevented families from communicating and slowed their reunification, also deprived Plaintiffs of the ability to seek comfort in each other." *Id.* at ¶¶ 100-104. The United States now moves to dismiss Plaintiffs' lawsuit.

## ARGUMENT

### I.   Plaintiffs' Claims Are Barred by the Discretionary Function Exception

#### A.  The Decision to Detain J.P. in Secure Adult Detention Facilities Pending Immigration Proceedings was Discretionary.

The Court lacks subject matter jurisdiction over this action because the United States has not waived its sovereign immunity for Plaintiffs' claims under the FTCA. The United States enjoys broad immunity from suit and "can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976). Absent a specific waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

Although the FTCA waives sovereign immunity for certain common-law tort claims, the statute contains express exceptions that "are designed to protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). One such exception – the "discretionary function" exception – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As the statute's legislative history explains, the FTCA was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The discretionary function exception bars claims arising from governmental conduct that (1) "involve[s] an element of judgment or choice" and (2) is "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (internal quotations and citations omitted). Under the first prong, courts look to whether "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). To survive a motion to dismiss, the plaintiff must identify a statute, regulation or policy that is both "*specific* and *mandatory*," as well as conduct that violates the statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (internal quotations and citation omitted) (emphasis in original).

Under the second prong, courts evaluate whether the conduct at issue is "susceptible to policy analysis." *Ferguson v. United States*, 792 Fed. Appx. 494, 495 (9th Cir. 2020). "The focus of the inquiry is *not* on the agent's subjective intent in exercising the discretion conferred by statute or regulation." *Gaubert*, 499 U.S. at 325 (emphasis added). Rather, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324; *see also Gonzalez v. United States*, 814 F.3d 1022, 1027-28 (9th Cir. 2016).

When the challenged governmental conduct "involve[s] an element of judgment or choice" and is "susceptible to" policy analysis, the discretionary function exception applies and the complaint must be dismissed for lack of subject matter jurisdiction, regardless of whether the government acted negligently or abused its discretion. *See Gaubert*, 499 U.S. at 323; *Barian v. United States*, 728 Fed. Appx. 703, 704 (9th Cir. 2018); *Gordon v. United States*, 739 Fed. Appx. 408 (9th Cir. 2018) (affirming dismissal of action pursuant to Rule 12(b)(1)); *Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016) (same).

Here, Plaintiff J.P. was amenable to prosecution under 8 U.S.C. § 1325(a). She and her daughter L.C. were separated by CBP, with J.P. subsequently detained in secure adult detention facilities following CBP custody, and L.C., rendered unaccompanied due to her

mother being amenable to criminal prosecution, placed in the care and custody of ORR.[4] Plaintiffs' claims are barred because the governmental conduct from which their claims arise involves precisely the sort of discretionary decision-making that is shielded by the FTCA.  It is immaterial whether the discretionary decisions were made in furtherance of a policy that remains in place or one that subsequently has been rejected (as is the case here). The decisions remain discretionary and cannot give rise to liability under the FTCA.

"Discretion lies at the heart of the DHS law enforcement function."  *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999) (noting concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context).  The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  *See* 8 U.S.C. § 1231(g)(1).  "Congress has placed the responsibility of determining where aliens are detained *within the discretion* of the [Secretary]."  *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added)[5];

---

[4] Once the decision is made to detain an adult in a secure detention facility, separation of that adult from a child with whom he or she crossed the border is required. The statutory UAC definition is a broad one that includes circumstances where a parent is physically present but nevertheless unavailable to provide care and physical custody.  6 U.S.C. § 279(g)(2).  A parent who is detained in criminal custody or secure detention pending removal proceedings . . . and therefore, is no longer available to provide care and physical custody. Moreover, the *Flores* Agreement precludes detention of minors in secure detention facilities, absent circumstances not alleged here.  Rather, under *Flores*, "[DHS] must transfer the minor to a non-secure, licensed facility." 828 F.3d at 902-03; *see also Bunikyte*, 2007 WL 1074070, at *16 (to comply with the *Flores* Agreement, DHS must "releas[e] the children to adult relatives not in custody, adult friends designated by their parents, or even state-operated foster care[.]").  Thus, separation occurs regardless of the UAC designation.

[5] *See also Gandarillas- Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

*Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("[T]he decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the [Secretary] and implicates issues of foreign policy.").[6]

This policy-laden discretion necessarily extends to decisions regarding with whom noncitizens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together.  In *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), for example, the court dismissed FTCA claims similarly arising from the prior administration's prosecution policy that resulted in family separations.  As here, the plaintiffs in *Peña Arita* alleged that the government's practices were unlawful and challenged various associated conditions of confinement.  *Id.* at 686-87.  In dismissing the plaintiffs' claims, the *Peña Arita* court agreed with the government that the policy itself and its implementation by officers in the field are discretionary."  *Id.* at 687 ("[P]rosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception.").  Accordingly, the court held that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the

---

[6] *See also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions regarding where to place prisoners are policy-based decisions protected by the discretionary function exception); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions regarding whether to detain or release are policy-based decisions protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[A]ssignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception[.]"); *Muick v. Reno*, 83 Fed. Appx. 851, 853 (8th Cir. 2003) (holding claim based on "classification and placement of inmates" barred by discretionary function exception); *Baires v. United States*, 2011 WL 1743224, at *7 (N.D. Cal. May 6, 2011) (decision "to send detainees to one facility or another" is "precisely the kind of conduct protected by the [discretionary function] exception"); *Newbrough v. Piedmont Reg'l Jail Auth.*, 2012 WL 169988, at *4 (E.D. Va. Jan. 19, 2012) (holding "detainee designation and classification decisions . . . fall squarely within the discretionary function exception"); *Douglas v. United States*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011) ("ICE must weigh various policy considerations in deciding which suspected aliens to detain" and "how to detain them").

court was "without jurisdiction to second-guess." *Id.* (quoting *Gaubert*, 499 U.S. at 323).

In this case, Plaintiff J.P. was detained pursuant to the prior administration's enforcement of federal immigration statutes. Such decision-making is not merely "susceptible to" policy analysis, but the government spelled out the policies that it sought to advance with its enforcement efforts in a series of specific Executive Branch directives. As other courts have recognized, policies related to the secure immigration custody of adults as well as the Zero Tolerance Memorandum —which was subsequently revoked— "amount[] to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87.

As a result of the government's discretionary and policy-based decision to securely detain Plaintiff, her minor child was placed in the care and custody of ORR, which was vested with authority to make a range of discretionary decisions to ensure the child's health and welfare. "It is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations." *Walding v. United States*, 955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013). The same is true with respect to child welfare considerations made by ORR, such as what is in the "best interests of the child" and the type of setting appropriate for children. *See* 8 U.S.C. § 1232(c)(2)(A); 6 C.F.R. § 115.14(a). Accordingly, the separation that forms the basis of Plaintiffs' Complaint was the consequence of discretionary decision-making, and Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction.[7]

In order to overcome the discretionary function exception, Plaintiffs must identify a statute, regulation or policy setting forth a course of conduct that is both "*mandatory* and *specific*," as well as conduct that violates said mandatory and specific statute, regulation,

---

[7] In *C.M. v. United States,* 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020), and *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020)*,* which also involved claims arising out of family separations at the Southwest border, the court found that the discretionary function exception did not apply because the plaintiffs in those cases "alleged plausible constitutional violations." Here, Plaintiff does not allege that federal officers violated the Constitution in exercising their discretion to detain Plaintiff in a secure detention facility and transfer her child to the care and custody of ORR, as required under federal law. *See generally* Compl.

or policy.  *See Holy See*, 557 F.3d at 1084.  Plaintiffs' Complaint fails to do so.  Rather, the broad Governmental policies and policy-based statements by the Trump Administration, DHS and ORR referenced in the Complaint do not meet this standard, as those statements are both generalized and permissive, not "mandatory and specific." Compl. at ¶¶ 24-68.

In short, "[b]ecause the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the [Secretary] and implicates [considerations of public] policy," it falls squarely within the discretionary function exception.  *Mirmehdi*, 689 F.3d at 984.  Because the separation that forms the basis of Plaintiffs' claims was the consequence of discretionary decision-making, Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction.

**B.    Plaintiffs' Claims Concerning Their Conditions of Confinement Are Barred by the Discretionary Function Exception.**

Plaintiffs' Complaint additionally alleges that their detentions violated federal law and policy related to detention conditions.  Among other things, Plaintiffs allege they were required to sleep on the floor in a windowless room and that J.P. was not provided with adequate information about L.C.'s whereabouts. Compl. at ¶¶ 69-78.   While these allegations are troubling, courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the discretionary function exception because they involve discretionary decisions susceptible to policy considerations.   *See, e.g.*, *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 Fed. Appx. 819, 821 (11th Cir. 2013) (detainee medical care decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 Fed. Appx. 22, 29 (5th Cir. 2010) (discretionary function exception shielded decision to transfer prisoner to facility with allegedly inadequate medical

treatment); *Ross v. United States*, 2013 WL 5290498, at *4 (N.D. Tex. Sept. 18, 2013) ("FTCA complaints of overcrowding, understaffing, and similar issues pertaining to a prisoner's living quarters are routinely found to be excluded from the FTCA by the discretionary function exception"); *Antonelli v. Crow*, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United States*, 2009 WL 763052, at *63 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

## II.   Plaintiffs' Claims Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing the Law.

Plaintiffs' claims related to the decision to transfer L.C. to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (holding claim arising out of "the enforcement of 'rules and regulations'" barred by the exception).

Among other things, this exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the

- 13 -

regulation may be irregular or ineffective"). Accordingly, where a government employee's actions are authorized by statute or regulation, the exception for actions taken while reasonably executing the law applies, and the claim must be dismissed for lack of subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that J.P. was unable to provide care and physical custody for L.C. The government made the discretionary decisions to refer J.P. for criminal prosecution and to detain her in a secure immigration detention facility separate from L.C. Once those protected discretionary determinations had been made, the TVPRA required that L.C. be transferred to ORR custody. The enforcement of that statutory command cannot form the basis of an FTCA claim.[8]

### III. Plaintiffs' Claims Are Not Actionable Under the FTCA Because There Is No Private Person Analog.

Plaintiffs' claims further fail because the governmental conduct challenged has no private person analog. The FTCA requires a plaintiff to allege "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Here, Plaintiffs

---

[8] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F.*, 492 F. Supp. 3d at 996; *see also C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020). But, as just described, federal law does require that children be placed into ORR custody if their parents are unable to provide care and physical custody. And for the reasons described above, the decision to detain those parents for prosecution, and to detain them pending removal, is a quintessentially discretionary one.

do not even allege that a private person analog exists that would permit their suit under the FTCA. *See generally* Compl.

Indeed, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45- 46 (2005) (internal quotations omitted).  While the private analog need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).  Thus, as a general matter, the FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law."  *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotations omitted).

Plaintiffs' alleged harms stem from the Government's decisions to enforce federal criminal and immigration laws and hold J.P. in a secure adult detention facility pending her immigration proceedings, which rendered her child "unaccompanied" and resulted in the child's placement in the care and custody of ORR.  The United States has not waived its sovereign immunity for such decisions because only the federal government has the authority to enforce federal law and make determinations concerning the detention of noncitizens.  Accordingly, such decisions have no private person analog.  *See, e.g.*, *Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (holding decision to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action).

The district court in *C.M. v. United States,* 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020), found a private analog by comparing a federal detention facility to a private nursing home.  However, in doing so, the *C.M.* court relied on *Estate of Smith v. Shartle*, 2020 WL 1158552 at *2 (D. Ariz. Mar 10, 2020), a case in which a sex offender inmate was housed with, and then murdered by, a gang member who previously had threatened to kill him. The *Shartle* court found an analogy to a nursing home's duty of care found in Arizona Revised Statutes § 46-455, which imposes civil liability on private nursing home

employees who cause or permit the life of a vulnerable adult to be endangered by neglect. The United States respectfully submits that the *C.M.* court's ostensible private person analogy—comparing the federal government's authority to enforce federal immigration law and to make discretionary determinations concerning the detention of noncitizens to the operation of a private nursing home—is inapposite.[9]

Indeed, courts have repeatedly held that governmental decisions concerning immigration have no private person counterpart and thus cannot serve as the basis for a claim under the FTCA. *See, e.g.*, *Bhuiyan v. United States*, 772 Fed. Appx. 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 Fed. Appx. 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing "immigration matters" are "an inherently governmental function"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (holding, in matters relating to naturalization of aliens, "only the United States has the power to act" and thus "there is no private analog under state law"); *Omoniyi v. Dep't of Homeland Sec.*, 2012 WL 892197, at *9 (S.D.N.Y. Mar. 13, 2012) ("[T]he alleged misconduct of CIS in initially denying Plaintiffs [sic] naturalization application has no private analog . . . .").

The Second Circuit's decision in *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988) is instructive. In that case, the Second Circuit rejected the plaintiff's FTCA suit challenging the Department of State's wrongful revocation of his U.S. citizenship, holding that the plaintiff failed to "satisf[y] the private analogue requirements." *Id.* at 1126. In so holding, the court observed: "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* at 1125 (internal quotations and citation

---

[9] For the same reasons, the United States respectfully submits that the private person counterpart found in *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020), also does not provide the "persuasive analogy" required by 28 U.S.C. §§ 1346(b)(1) and 2674.

omitted). Thus, the court determined, "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists," since, "[w]ithout doubt, no private citizen is empowered to certify the loss of American nationality." *Id.* at 1125-26.

The same is true here – the federal government's detention decisions are, without doubt, ones that no private actor is empowered to make: "Private persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016); *see also, e.g.*, *Buzzanca v. D.C.*, 2021 WL 796275, at *4 (D.D.C. Mar. 2, 2021) (dismissing FTCA claims, holding "[p]laintiff's claim rests on his wrongful detention, and only the government has the authority to detain"); *Portillo v. United States*, 2018 WL 523363, at *3 (D. Nev. Jan. 22, 2018) (dismissing FTCA claims, holding authority to "detain other persons" is "a uniquely governmental function that has no private analogue"), *aff'd*, 741 Fed. Appx. 415 (9th Cir. 2018).  Accordingly, Plaintiffs' claims should be dismissed.

**IV.  Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Recovery for Constitutional Torts.**

Plaintiffs' claims are also barred because the FTCA does not authorize constitutional tort claims like those Plaintiffs pursue here. While the FTCA provides a limited waiver of sovereign immunity for certain common-law tort claims, the Supreme Court has held that the FTCA does not provide a cause of action for torts involving alleged constitutional violations.  *Meyer*, 510 U.S. at 477-78.  As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person' 'in accordance with the law of the place where the act or omission occurred.'"  *Id.* (quoting 28 U.S.C. § 1346(b)).  "A constitutional tort claim . . . could not contain such an allegation."  *Id.* at 477.  Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."  *Id.* at 478; *Roundtree v. United States,* 40 F.3d 1036, 1038 (9th Cir. 1994) ("United States cannot be sued on the theory that there has been a violation of [plaintiffs'] constitutional rights.").

In the instant case, Plaintiffs' claims appear to be based, at least in part, on the conditions of confinement that J.P. experienced at Musick Detention Facility in Irvine,

California. Compl. ¶¶ 69-78. Although J.P. labels her claims as claims for IIED, negligence, abuse of process, and loss of child consortium, courts have recognized that claims based on conditions of confinement are more properly characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement. . . [and] the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions.'" *Aguilar v. United States*, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017) (dismissing allegations regarding food, crowding, and sanitation at CBP detention facility); *see also, e.g.*, *Sutter v. United States*, 2019 WL 1841905, at *4 (C.D. Cal. March 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted); *Thompson v. United States*, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015) (condition of confinement claim is constitutional claim that cannot be brought under FTCA).

Notably, J.P. does not allege that federal officers violated the Constitution in separating her from her child as authorized by federal statutes. *See generally* Compl. Moreover, it has been recognized by at least one court in this context that an alleged constitutional violation did not defeat application of the FTCA's discretionary function exception. *See Peña Arita*, 470 F. Supp. 3d at 688 (dismissing FTCA claims based on family separation, holding, in part, "to the extent Plaintiffs . . . assert that the Constitution itself furnishes a nondiscretionary standard . . . such claim is jurisdictionally barred").

**V.    Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Direct Liability or Institutional Tort Claims Against the Government.**

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain common-law torts committed by federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)). The plain language of 28 U.S.C. § 1346(b) requires a plaintiff to establish that the conduct of individual government employee(s) caused harm:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of *any employee of the Government while acting within the scope of his office or employment* . . .

(emphasis added). Furthermore, in *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005), the Ninth Circuit held that the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Id.* at 1052-55. Hence, as a matter of law, a plaintiff cannot assert "systemic" claims under the FTCA, but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment.

Recently, in *Lee v. United States*, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), the court applied *Adams* in a FTCA action based on the "generalized negligence" of various government employees, contractors, and agents responsible for operating a prison facility. *Id.* at *6. Applying *Adams*, the court dismissed plaintiff's FTCA claims, holding that the "FTCA applies only to 'the negligent or wrongful act or omission of *any employee of the United States* while acting within the scope of his office or employment,' not to generalized theories of negligence asserted against the staff and employees of federal institutions as a whole." *Id.* (emphasis in original).

Here, as in *Lee*, Plaintiffs seek to raise institutional or "systemic" tort claims against the United States, alleging that various unidentified federal employees and officials of many different federal agencies engaged in tortious conduct "as a whole," rather than alleging specific tortious acts or omissions on the part of individual federal employees.[10] The FTCA's limited waiver of sovereign immunity does not encompass "systemic" tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Id.* Because that is what Plaintiffs allege here, their claims are not cognizable under the FTCA and should be dismissed.

---

[10] Plaintiffs allege that the "U.S. Government," "U.S. Government officials," and "high ranking officials at CBP, DHS and ORR" engaged in the alleged conduct underlying their claims. *See e.g.*, Compl. ¶¶ 1, 3-7, 22-31. Notably, however, Plaintiffs fail to identify any tortious conduct on the part of a specific, individual federal employee as required to be actionable under the FTCA. *See generally* Compl.

## VI.  Plaintiffs' Claims Are Not Actionable Under Arizona Law.

In addition, Plaintiffs' claims should be dismissed because they arise from their lawful detention and are therefore barred under applicable state law.  Under Arizona law, an individual cannot recover in tort for injuries sustained as a consequence of his or her own criminal conduct and lawful detention.  *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198 (Ct. App. 2017).  For example, in *Muscat*, the Arizona Court of Appeals held that a plaintiff, who sought to recover in tort for "pain, suffering, distress, [and] mental and emotional anguish," had not suffered a "legally cognizable injury" because the alleged harms flowed from his lawful incarceration.  *Id.* at 198-99.  In doing so, the court explained, "recognizing the legal consequences of a ward's criminal conduct as a legally cognizable injury would distort the long-established public policy of personal accountability for criminal behavior."  *Id.* at 198.

Here, Plaintiffs were lawfully detained after crossing the United States-Mexico border in violation of federal law.  As a direct consequence of being subject to mandatory immigration custody pending expedited removal proceedings, Plaintiff was securely detained and separated from her minor child in accordance with federal statutes.  Plaintiffs' tort claims, which seek to recover for harm suffered as a result of that separation, are not actionable under state law because, as in *Muscat*, the harm that Plaintiffs allege here flows from J.P.'s lawful detention.  *See Muscat*, 244 Ariz. at 198.

## VII.  Plaintiffs' Negligence Claim Should Be Dismissed for Failure to State a Claim.[11]

Alternatively, Plaintiffs' negligence claim (Count 2) should be dismissed for failure to state a claim.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[11] In accordance with Local Rule 12.1(c), undersigned counsel hereby certifies that she provided notice of the United States' motion to dismiss under Rule 12(b)(6) and the parties were unable to cure the alleged jurisdictional defects through amendment.

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint's allegations must give defendants "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a negligence claim under Arizona law, a plaintiff must allege sufficient facts to support the following four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 (Ariz. 2007). "To bring a colorable FTCA claim, Plaintiff must first meet the minimum pleading standards required to state an underlying negligence claim against a federal employee for which the Government can then be held liable." *Lee*, 2020 WL 6573258, at *6. Plaintiff fails to do so here.

Plaintiffs allege that "[t]he federal officers and officials referenced above had a duty to Plaintiffs to act with ordinary care and prudence so as not to cause harm or injury to Plaintiffs." Compl. ¶ 93. In addition to failing to identify the source of Arizona law imposing such a duty, *see Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (noting "any duty that the United States owed to plaintiffs must be found in . . . state tort law"), the Complaint is void of specific factual allegations that any *particular federal employee* "was negligent in performing his or her responsibilities" relating to the alleged detention and separation, "or how any of the particular employee's negligent acts or omissions contributed" to Plaintiff's alleged injury. *See Lee,* 2020 WL 6573258, at *6. The Complaint does not identify the specific conduct that Plaintiffs claim to have been negligent. Indeed, Plaintiffs merely allege that the federal government and unidentified federal employees referenced throughout the Complaint "failed to act with ordinary care and breached their duty of care owed to Plaintiffs," without specifying what particular acts or omissions serve as the basis of their negligence claim. *See* Compl. ¶ 94.

Courts in this District have not hesitated to dismiss FTCA suits that relied on general allegations against unspecified federal employees and that failed to plead how any specific federal employee breached a duty of care. *See, e.g.*, *Lee*, 2020 WL 6573258, at *5-6 (holding "allegations—generically stated and shared by up to a dozen federal employees— are insufficient to state an FTCA claim against the Government"); *Tsosie v. United States*, 2019 WL 2476601, at *4-5 (D. Ariz. June 13, 2019) (dismissing FTCA claim holding that plaintiffs' "failure to name specific healthcare providers in the Complaint or identify how these providers were negligent does nothing more than make conclusory statements"); *Snyder v. United States*, 2013 WL 1867008, at *1 (D. Ariz. May 2, 2013) (dismissing FTCA claim holding, while the complaint "mentions many doctors . . . and generally asserts that they engaged in various forms of misconduct," plaintiff has not "pled specific facts as to how any of the individual doctors" breached a duty of care); *Mathis v. United States*, 2011 WL 4352291, at *1 (D. Ariz. Sept. 16, 2011) (holding "claims asserted against unnamed 'medical staff' are insufficient to state a . . . claim under Rule 8"); *Dominguez ex rel. Dominguez Rivera v. Corbett*, 2010 WL 3619432, at *7-8 (D. Ariz. Aug. 5, 2010) (dismissing FTCA claim holding claim "does not contain facts regarding any individual employee (by either name or description), who, acting within the scope of their employment, committed a tort against Plaintiff").

Plaintiffs must allege sufficient facts—not simply "labels and conclusions" or [t]hreadbare recitals of the elements of a cause of action"—that would give the government "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 678. "Absent specific allegations regarding the roles and responsibilities of individual federal employees, how each employee breached his or her duties of care," including the specific conduct alleged to have breached said duties, "and how their negligent conduct caused [Plaintiff] harm," Plaintiffs' allegations are "too vague and conclusory" to give the United States fair notice of Plaintiffs' negligence claim and the grounds upon which it rests. *See Lee*, 2020 WL 6573258, at *7. Accordingly, Plaintiffs' negligence claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 8(a) and 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, this action should be dismissed.


RESPECTFULLY SUBMITTED this 24th day of June, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/*Theo Nickerson*
THEO NICKERSON
Assistant United States Attorney
*Attorneys for the United States*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 24, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

**Daniel Benjamin Pasternak**
**Squire Patton Boggs (US) LLP**
**2325 E. Camelback Road**
**Suite 700**
**Phoenix, AZ 85016**
**Phone: 602-528-4000**
**Email: daniel.pasternak@squirepb.com**

**Hena Vora**
**Proskauer Rose LLP - New York, NY**
**11 Times Sq.**
**New York, NY 10036-8299**
**Phone: 212-969-3842**
**Email: hvora@proskauer.com**

**Joel Frost-Tift**
**Public Counsel**
**610 S Ardmore Ave.**
**Los Angeles, CA 90005**
**Phone: 518-268-9511**
**Email: jfrost-tift@publiccounsel.org**

**Manuel Cachan**
**Proskauer Rose LLP - Los Angeles, CA**
**2029 Century Park E, Suite 2400**
**Los Angeles, CA 90067**
**Phone: 310-284-4568**
**Email: mcachan@proskauer.com**

**Sara Lynn Van Hofwegen**
**Public Counsel**
**610 S Ardmore Ave.**
**Los Angeles, CA 90005**
**Phone: 213-201-4712**
**Email: svan@publiccounsel.org**
*Attorneys for Plaintiff*

<u>s/ Theo Nickerson</u>
U.S. Attorney's Office

- 24 -