Daniel B. Pasternak (SBN 023751)
SQUIRE PATTON BOGGS (US) LLP
2325 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone:    602.528.4187
Facsimile:    602.253.8129
daniel.pasternak@squirepb.com

Manuel F. Cachán (*pro hac vice*)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone:    310.557.2900
Facsimile:    310.557.2193
mcachan@proskauer.com

Hena M. Vora (*pro hac vice*)
Timothy E. Burroughs*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone:    212.969.3000
Facsimile:    212.969.2900
hvora@proskauer.com
tburroughs@proskauer.com

Sara Van Hofwegen (*pro hac vice*)
Joel Frost-Tift (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone:    213.385.2977
Facsimile:    213.385.9089
svanhofwegen@publiccounsel.org
jfrost-tift@publiccounsel.org

Attorneys for Plaintiffs
* *Pro hac vice application forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

J.P. and L.C.,

                    Plaintiffs,

        vs.

United States of America,

                    Defendant.

No. 2:22-cv-00683

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

(Oral Argument Requested)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................2

LEGAL STANDARD..............................................................................................3

ARGUMENT...........................................................................................................3

I.      Defendant Cannot Establish that the Discretionary Function Exception Bars
        Plaintiffs' Claims .........................................................................................3

        A.      Defendant Did Not Have Discretion to Violate the Constitution or Federal
                Mandates in Separating J.P. and L.C. ........................................................4

        B.      The Government Had No Discretion to Declare L.C. "Unaccompanied" or
                Send Her to ORR ...................................................................................7

II.     No Statute or Regulation Mandated Separating Plaintiffs and Defendant Did Not
        Act with Due Care ........................................................................................10

        A.      No Statute or Regulation Mandated Plaintiffs' Separation....................................11

        B.      The Separation of Children from Their Parents at the Hands of Government
                Agents Was Done Without Due Care .........................................................12

III.    Plaintiffs' Tort Claims Satisfy the Broad Private Analog Inquiry........................................13

IV.     Plaintiffs' Tort Claims Are Not Barred Merely Because Defendant's Tortious
        Conduct Also Happened to Infringe Plaintiffs' Constitutional Rights ................................16

V.      Plaintiffs Allege Tortious Actions of Individual Government Employees and Do
        Not Rely Only on Institutional Acts of the Government As a Whole .................................18

VI.     Arizona Law Does Not Shield Defendant's Independently Tortious Acts..........................19

VII.    Plaintiffs Allege the Elements of a Negligence Claim ........................................................20

CONCLUSION.......................................................................................................21

i

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A.F.P. v. United States*,
    No. 21-CV-00780-DAD-EPG, 2022 WL 2704570 (E.D. Cal. July 12, 2022) ............. 1, 4, 5, 10

*A.I.I.L. v. Sessions*,
    No. CV-19-00481-TUC-JCH, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) ...................... passim

*A.P.F. v. United States*,
    492 F. Supp. 3d 989 (D. Ariz. 2020) ............................................................................. passim

*Adams v. United States*,
    420 F.3d 1049 (9th Cir. 2005) ................................................................................................ 18

*Aguilar v. United States*,
    No. 1:16-CV-048 ....................................................................................................................... 17

*Akutowicz v. United States*,
    859 F.2d 1122 (2d Cir. 1988).................................................................................................. 15

*Andreini v. United States*,
    15-CV-01169-JD, 2017 WL 3895705 (N.D. Cal. Sept. 6, 2017) .............................................. 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................. 20

*Bailey v. United States*,
    623 F.3d 855 (9th Cir. 2010) ..................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................. 20

*Bickler v. Senior Lifestyle Corp.*,
    No. CV-09-00726-PHX-DGC, 2010 WL 2292985 (D. Ariz. June 8, 2010) ............................ 14

*Borquez v. United States*,
    773 F.2d 1050 (9th Cir. 1985) ................................................................................................. 11

*Broadbent by Broadbent v. Broadbent*,
    184 Ariz. 74 (1995).................................................................................................................. 14

*Thompson v. United States*,
    No. 1:14-CV-0894, 2015 WL 5567934 (M.D. Pa. Sept. 21, 2015)........................................ 17

ii

*C.M. v. United States*,
    No. 19-CV-05217-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ............................. passim

*C.P. Chemical Co. v. United States*,
    810 F.2d 34 (2d Cir. 1987) .................................................................................................. 15

*Cook v. Tex. Dep't of Crim. Justice Transitional Planning Dep't*,
    37 F.3d 166 (5th Cir. 1994) ............................................................................................... 17

*D.J.C.V. v. United States*,
    No. 20 CIV. 5747 (PAE), 2022 WL 1912254 (S.D.N.Y. June 3, 2022) ............................. 5

*DeMontiney v. Desert Manor Convalescent Ctr. Inc.*,
    144 Ariz. 6 (1985) .............................................................................................................. 21

*Dugard v. United States*,
    835 F.3d 915 (9th Cir. 2016) ............................................................................................. 13

*Estate of Smith v. Shartle*,
    No. CV-18-00323-TUC-RCC, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) ............... 14, 16

*F.R. v. United States*,
    No. 21-CV-00339-DLR, Dkt. 77 (D. Ariz. July 22, 2022) .......................... 1, 4, 5, 10

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ........................................................................................................... 17

*Ferguson v. United States*,
    No. 15-CV-1253 JM (DHB), 2016 WL 4793180 (S.D. Cal. Sept. 14, 2016) ..................... 10

*Flores v. Sessions*,
    2018 WL 4945000 (C.D. Cal. July 9, 2018) ...................................................................... 10

*Garcia-Feliciano v. United States*,
    No. 12-1959 (SCC), 2014 WL 1653143 (D.P.R. Apr. 23, 2014) ...................................... 12

*Gipson v. Kasey*,
    214 Ariz. 141 (2007) .......................................................................................................... 20

*Gonzalez v. United States*,
    No. CV-12-01912 (DMG), 2013 WL 942363 (C.D. Cal. Mar. 11, 2013) .......................... 11

*Hatahley v. United States*,
    351 U.S. 173 (1956) ........................................................................................................... 12

*Hill v. Safford Unified Sch. Dist.*,
    191 Ariz. 110 (App. 1997) ................................................................................................. 14

iii

*In re Baker*,
693 F.2d 925 (9th Cir. 1982) ......................................................................................... 7

*Indian Towing Co. v. United States*,
350 U.S. 61 (1955)....................................................................................................... 13

*J.S.R. by and through J.S.G. v. Sessions*,
330 F. Supp. 3d 731 (D. Conn. 2018)............................................................................. 5

*Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*,
319 F. Supp. 3d 491 (D.D.C. 2018) ............................................................................ 4, 8

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ......................................................................................... 9

*Lee v. United States*,
No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18,
2020) ............................................................................................................................ 18

*Limone v. United States*,
579 F.3d 79 (1st Cir. 2009).......................................................................................... 18

*Liranzo v. United States*,
690 F.3d 78 (2d Cir. 2012)........................................................................................... 15

*Martinez v. United States*,
No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562 (D. Ariz. July 10,
2018) ...................................................................................................................... 14, 16

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ......................................................................................... 9

*Ms. L. v. U.S. Immigration & Customs Enf't*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018), *modified by* 330 F.R.D. 284 (S.D. Cal.
2019) ...................................................................................................................... 5, 8, 10

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
527 F.2d 1252 (2d Cir. 1975)....................................................................................... 12

*Nunez Euceda v. United States*,
No. 20-CV-10793V-APG-JSX, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) ........... 1, 4, 5, 10

*Nurse v. United States*,
226 F.3d 996 (9th Cir. 2000) ............................................................................... 3, 4, 6, 17

*O'Toole v. United States*,
295 F.3d 1029 (9th Cir. 2002) ....................................................................................... 3

iv

*P.G. v. United States*,
    No. CV-21-04457, Dkt. 44 (N.D. Cal. May 10, 2022) ................................... 1, 4, 5, 10

*Pankratz v. Willis*,
    155 Ariz. 8 (App. 1987) ....................................................................................... 14

*Prescott v. United States*,
    973 F.2d 696 (9th Cir. 1992) ................................................................................. 3

*Prisco v. Talty*,
    993 F.2d 21 (3d. Cir. 1993) ................................................................................. 18

*Raz v. United States*,
    343 F.3d 945 (8th Cir. 2003) ............................................................................... 18

*Sanders v. Alger*,
    242 Ariz. 246 (2017) .................................................................................... 14, 21

*Save the Peaks Coal. v. U.S. Forest Serv.*,
    No. CV 09-8163 (PCT)(MHM), 2010 WL 3800896 (D. Ariz. Sept. 22, 2010) ....................... 12

*Sutter v. United States*,
    17-CV-07245, 2019 WL 1841905 (C.D. Cal. Mar. 12, 2019) ................................ 17

*Tekle v. United States*,
    511 F.3d 839 (9th Cir. 2007) ............................................................................... 13

*United States v. Muniz*,
    374 U.S. 150 (1963) ............................................................................................. 13

*United States v. Orleans*,
    425 U.S. 807 (1976) ............................................................................................. 18

*United States v. Gaubert*,
    499 U.S. 315 (1991) ........................................................................................... 3, 8

*United States v. Olson*,
    546 U.S. 43 (2005) ................................................................................................. 3

*Webster v. Fall*,
    266 U.S. 507 (1925) ............................................................................................... 7

*Welch v. United States*,
    409 F.3d 646 (4th Cir. 2005) ..................................................................... 10, 11, 12

*Wong Wing Fai Co., S.A. v. United States*,
    840 F.2d 1462 (9th Cir. 1988) ............................................................................... 5

v

*Xue Lu v. Powell*,
  621 F.3d 944 (9th Cir. 2010) ................................................................................ 13

*Zabriskie v. Fed. Nat'l Mortg. Ass'n*,
  109 F. Supp. 3d 1178 (D. Ariz. 2014) ...................................................................... 9

**STATUTES**

6 U.S.C. § 279(g) ................................................................................................... 8, 9

8 U.S.C. § 1232(b)(1) .................................................................................................. 7

8 U.S.C. § 1232(b)(3) ...................................................................................... 7, 8, 11

8 U.S.C. § 1232(c)(2)(A) ............................................................................................ 8

28 U.S.C. § 1346(b) ............................................................................................. 3, 13

28 U.S.C. § 1346(b)(1) ........................................................................................ 3, 18

28 U.S.C. § 2671 ...................................................................................................... 18

28 U.S.C. § 2674 ...................................................................................................... 13

28 U.S.C. § 2680(a) ............................................................................................ 10, 12

**OTHER AUTHORITIES**

6 C.F.R. § 115.14(a) .................................................................................................... 8

vi

**PRELIMINARY STATEMENT**

Plaintiffs J.P. and L.C. suffered severe trauma under a United States Government policy of separating children from their migrant parents to dissuade others from seeking asylum in the United States. While the policy is no more, the Government continues to deny responsibility for its actions, moving to dismiss Plaintiffs' claims using arguments Ninth Circuit District Courts have rejected no fewer than seven times. As those courts have held, Defendant's policy was unconstitutional, and the Government lacked any statutory authority to take children who were not "unaccompanied" from their parents.

Plaintiffs allege that Defendant's acts constitute intentional infliction of emotional distress ("IIED"), negligence, abuse of process, and loss of consortium between a parent and a child. These are all Federal Tort Claims Act ("FTCA") claims with Arizona law analogues.

As it has done in every case seeking redress for the Government's unconstitutional actions in separating families, Defendant seeks dismissal of Plaintiffs' complaint on several grounds, even though the arguments in support of those grounds have been rejected by every court in this circuit.[1] Defendant fails to meet its burden to establish on the pleadings that an exception to FTCA jurisdiction applies. Defendant's agents lacked the discretion to violate Plaintiffs' constitutional rights to family integrity and due process. Nor did the Government have the statutory or regulatory authority, much less a mandate, to separate Plaintiffs. Defendant's sole authority for its conduct, besides the unconstitutional policy itself, is a human trafficking victim law that would have applied only if L.C. were unaccompanied. But L.C. was accompanied by her mother when she entered the United States. And

---

[1] *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020); *C.M. v. United States*, No. 19-CV-05217-SRB, 2020 WL 1698191, (D. Ariz. Mar. 30, 2020); *Nunez Euceda v. United States*, No. 20-CV-10793V-APG-JSX, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, (D. Ariz. Mar. 31, 2022); *P.G. v. United States*, No. CV-21-04457, Dkt. 44 (N.D. Cal. May 10, 2022) *F.R. v. United States*, No. 21-CV-00339-DLR, Dkt. 77 (D. Ariz. July 22, 2022); *A.F.P. v. United States*, No. 21-CV-00780-DAD-EPG, 2022 WL 2704570, at *11-14 (E.D. Cal. July 12, 2022), each of which are discussed herein.

Defendant makes no attempt to argue its agents treated Plaintiffs with due care. Neither the discretionary function nor due care exceptions apply to these allegations.

Defendant also claims that Plaintiffs' tort claims are barred because they seek to redress constitutional violations. However, the Government cannot escape liability for violating its tort duties to Plaintiffs merely because its agents *also* violated the Constitution.

Defendant's remaining arguments are similarly flawed. There is no bar on "institutional" torts, and the Complaint pleads acts on the part of numerous individual Government officials and agents. The one case on which the Government relies to suggest that Plaintiffs are themselves responsible for the harm they suffered is blatantly inapposite—involving a convicted sex offender who sued a supervisory group home for leaving him unsupervised, during which time he committed another sexual assault. Finally, the Complaint is replete with allegations of breaches of the Government's duty of care to Plaintiffs during their detention. The Government's motion should be denied.

## BACKGROUND

Plaintiff J.P. and her then sixteen-year-old daughter, L.C., fled Guatemala in May 2018 to escape violence. (Compl. ¶ 3.) J.P. spoke only Q'eqchi', a Mayan language rarely spoken outside of Guatemala, and could not read or write. (*Id.* ¶¶ 2, 51.) After leaving her village, J.P. was dependent on her daughter to communicate as L.C., although she could not speak English, was fluent in the Spanish language. (*Id.*) Shortly after crossing the border at San Luis, Arizona, J.P. and L.C. were apprehended by Customs and Border Patrol officers. (*Id.* ¶ 53.) While detained, J.P. and L.C. witnessed CBP officers forcibly separating children from their parents. (*Id.* ¶ 57.) J.P. and L.C. became terrified they too would be separated. (*Id.* ¶ 58.) They were.

On approximately May 20, 2018, a CBP officer told L.C. she would be taken from her mother. (Compl. ¶ 59.) Both J.P. and L.C. began to cry when the CBP officer came to take L.C. (*Id.* ¶¶ 59-60.) As she was pulled away from her mother, L.C. fainted and fell face-first onto a concrete floor. (*Id.* ¶ 60.) L.C.'s face bled while J.P. watched, unable to help her daughter. (*Id.* ¶ 61.) It would take four weeks for J.P. to learn her daughter's

whereabouts or physical condition and another four for mother and daughter to be reunited. (*Id.* ¶¶ 63, 80-81.)  J.P. and L.C. were never charged with a crime, nor was J.P. ever found unfit to parent L.C.  (*Id.* ¶ 83.)

J.P. and L.C. were among the victims of an unlawful policy intended to harm them and others like them, to discourage families from seeking asylum in the United States. (Compl. ¶ 5.)  As a result of the intentional, reckless, and negligent acts of Defendant's officials, Plaintiffs continue to suffer physical, mental, and emotional harm.  (*Id.* ¶¶ 84-89.)

## LEGAL STANDARD

While the Government is generally immune from liability absent its consent, the FTCA provides that consent "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)).  The FTCA's waiver of sovereign immunity contains a number of exceptions. Because the FTCA is a remedial statute, those exceptions must be read narrowly, *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002), and the Government bears the burden of proving they apply, *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992) (citing 28 U.S.C. § 1346(b)).

## ARGUMENT

**I.  Defendant Cannot Establish that the Discretionary Function Exception Bars Plaintiffs' Claims**

To invoke the discretionary function exception to the FTCA, the Government must show its action involved an element of judgment or choice and were based on considerations of public policy.  *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  Dismissal is improper if the alleged conduct "may have been non-discretionary." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).

The Government fails to meet its burden to establish that the exception applies because, as explained below, the separation of Plaintiffs at a minimum "may have been" unconstitutional, the Government lacks discretion to violate the Constitution or a federal

statute or regulation, *Gaubert*, 499 U.S. at 322, and "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply," *Nurse*, 226 F.3d at 1002 n.2. Even if the Government could establish on the face of the pleadings that Plaintiffs separation was constitutional, it lacked discretion to unlawfully transfer L.C. to Office of Refugee Resettlement's ("ORR") custody, separating her from her mother, when she was not "unaccompanied."

**A.     Defendant Did Not Have Discretion to Violate the Constitution or Federal Mandates in Separating J.P. and L.C.**

Courts in this district, and more broadly, within this circuit, have held, without exception, that claims arising from the Government's separation of immigrant families fall outside the scope of the discretionary function exception. "Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiff." *A.P.F.*, 492 F. Supp. 3d at 996; *see C.M.*, 2020 WL 1698191, at *4; *A.I.I.L.*, 2022 WL 992543, at *4 ("Because constitutional violations are not subject to discretion, the discretionary function exception does not apply."); *F.R.*, No. 21-CV-00339-DLR, Dkt. 77; *see also Nunez Euceda*, 2021 WL 4895748, at *4; *P.G.*, No. CV-21-04457, Dkt. 44 ("Since the family separation policy was a policy prescribed by the Trump Administration, the front-line employees tasked with implementing the policy did not reasonably have any element of choice . . . ."); *A.F.P.*, 2022 WL 2704570, at *11-14.

That rule is in line with the decisions of other district courts around the country. The Government "directly and substantially burden[s]" a plaintiff's constitutional right "to family integrity" when it "continu[es] to detain" them "in separate facilities for many weeks with only periodic phone calls," which is precisely what the Complaint alleges. *Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*, 319 F. Supp. 3d 491, 501 (D.D.C. 2018); *see J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741 (D. Conn. 2018) (even the government "agree[d] that a constitutional violation occurred when the [g]overnment separated children from their parents").

Nor can the discretionary function exception shield the Government's deprivation of Plaintiffs' due process rights.[2] "Because the [discretionary function exception] stems from an exemption to a waiver of sovereign immunity for tort claims, the doctrine, when applicable, applies only to decisions alleged to be negligent, not those alleged to be violative of due process." *Wong Wing Fai Co., S.A. v. United States*, 840 F.2d 1462, 1470 n.18 (9th Cir. 1988).[3] The court in a related suit brought on behalf of a class of migrant parents found that the Government's practice of separating families likely violated the parents' due process rights. *Ms. L. v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1144–46 (S.D. Cal. 2018), *modified by* 330 F.R.D. 284 (S.D. Cal. 2019). As *Ms. L.* reasons, "[a] practice of this sort implemented in this way is likely to be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience, interferes with rights implicit in the concept of ordered liberty[,] and is so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Id.* at 1145-46 (alteration in original) (internal citations and quotations omitted).

J.P. and L.C. allege their constitutional rights to family integrity and due process were violated. They were forcibly separated by Government agents without explanation. (Compl. ¶¶ 59-63.) During the first four weeks of their forced separation, Government agents kept them unaware of each other's location or wellbeing. (*Id.* ¶¶ 68, 75-77.) The plaintiffs in *C.M.*, *A.P.F.*, *A.I.I.L.*, *F.R.*, *Nunez Euceda*, *P.G.*, and *A.F.P.* all brought materially identical

---

[2] Defendant's citation to *Mejia-Mejia v. ICE*, does not support its contention that prosecutorial discretion via Executive policy can create a discretionary function exception shield to FTCA claims, as *Mejia* addressed only whether *Bivens* claims could be expanded to raise constitutional challenges to Executive powers "already subject to extensive Congressional action." No. CV 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019) (dismissing *Bivens* claim in part due to separation of powers concerns).

[3] *See D.J.C.V. v. United States*, No. 20 CIV. 5747 (PAE), 2022 WL 1912254, at *12, *15-16 (S.D.N.Y. June 3, 2022) (collecting cases) ("Assuming that the Government separated G.C. and D.J.C.V. pursuant to the Zero Tolerance policy, this action would not fit within the [discretionary function exception]. . . . [P]laintiffs plausibly allege that their constitutional rights—to due process under the Fifth Amendment—were violated.").

allegations. In this case, as in those, the allegations show that Defendant violated the Constitution—or at least that its actions "may have been" unconstitutional, which is all that is required. *See, e.g.*, *A.I.I.L.*, 2022 WL 992543, at *4 (finding Plaintiffs' allegations regarding misconduct arising out of the separations, confinement conditions, and infrequency of communication between parent and child sufficient to plead violation of constitutional rights).

The Government attempts to distinguish this case by arguing that "Plaintiff[s] do[] not allege that federal officers violated the Constitution" by detaining J.P., her separation from L.C., and L.C.'s later transfer to the custody of the ORR. (Mot. n.7.) The argument has two fatal flaws. First, Plaintiffs need not plead a constitutional violation for Defendant's discretionary function exception argument to fail. *See Nurse*, 226 F.3d at 1002 (dismissal on discretionary function exception grounds reversed even where the pleadings did not establish whether or not the policy-makers violated the Constitution nor which particular mandates were violated).[4] Second, the Government ignores the language of the Complaint, whose factual allegations are consistent with a deprivation of Plaintiffs' family-integrity and due process rights. (Compl. ¶¶ 4-6, 8, 11, 20, 59-79.) Plaintiffs need not use magic language or specific catch phrases to assert the Government acted unconstitutionally, particularly when the Complaint does not assert causes of action under the Constitution.

Defendant's reliance on a single out-of-circuit case, *Arita v. United States*, dismissing tort claims arising from the separation of families at the border in the face of abundant contrary in-circuit authority is misplaced. *See* 470 F. Supp. 3d 663, 684 (S.D. Tex. 2020). *Arita* was decided under the Fifth Circuit rule that it is a *plaintiff's* burden to allege the discretionary function exception does not apply. *See id.* In the Ninth Circuit, "[t]he [Government] bears the burden of proving" that the discretionary function exception applies. *Bailey v. United States*, 623 F.3d 855, 859 (9th Cir. 2010). The plaintiff in *Arita* also did

---

[4] In *Nurse*, the Ninth Circuit declined to establish a pleading standard for the discretionary function exception. 226 F.3d at 1002, n.2.

not raise, and the court did not address, that the Government lacked discretion to implement and execute the family separations policy as a constitutional matter. *See* 470 F. Supp. 3d at 686-87. *Arita* did not test whether the plaintiffs had sufficiently alleged facts raising potential constitutional violations to meet their pleading burden. Cases are not precedent for issues they do not discuss. *See, e.g.*, *Webster v. Fall*, 266 U.S. 507, 511, (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *In re Baker*, 693 F.2d 925, 925–26 (9th Cir. 1982) (prior case found not to have established controlling precedent on issue before the court since the question at issue was neither contested nor ruled upon in that case).

Finally, application of the discretionary function exception in *Arita* turned on the Government's purported prosecutorial discretion to charge plaintiff, not to separate the plaintiff from his family. 470 F. Supp. 3d at 686-87.[5] But Plaintiffs have not pleaded they were prosecuted, much less that they were separated under some exercise of prosecutorial judgment. The Government acknowledges as much by arguing that J.P. was merely "amenable" to prosecution. (Mot. 8.)

**B.** **The Government Had No Discretion to Declare L.C. "Unaccompanied" or Send Her to ORR**

The Department of Health and Human Services ("HHS"), of which ORR is a part, has statutory authority for the custody and care only of *unaccompanied* alien children. 8 U.S.C. § 1232(b)(1), (3). L.C. was accompanied by her mother and J.P. was never criminally prosecuted and was available to care for her child. (Compl. ¶¶ 49, 51-54, 83.) Under 6 U.S.C. § 279(g), the Government could not designate L.C. an "unaccompanied alien child"

---

[5] The Government argues the *Arita* court "agreed" that "the policy itself and its implementation by officers in the field are discretionary." (Mot. 10.) While the *Arita* court "agree[d] with the United States" that the discretionary function exception applied, however, its reasoning centered on prosecutorial judgment under the Zero Tolerance Memorandum but did not conclude that family separations other than plaintiff's were necessarily discretionary. *See Arita*, 470 F. Supp. 3d at 686.

when a parent was available to care for her. It therefore lacked discretion under 8 U.S.C. 1232(b)(3) to take L.C. from her mother. As noted, the Government lacks discretion to violate a federal statute or regulation. *See Gaubert*, 499 U.S. at 322. In considering whether the discretionary function exception bars an FTCA claim, courts hold that "[i]f the challenged action was made under a mandatory duty, with no exercise of discretion, that is the end of the matter—the federal government may be sued." *Andreini v. United States*, 15-CV-01169-JD, 2017 WL 3895705, at \*2 (N.D. Cal. Sept. 6, 2017).

Defendant's only cited authority for housing a minor child away from her mother is the Trafficking Victims Protection Reauthorization Act ("TVPRA") and its implementing regulations, which the Government argues allowed it to decide how to house unaccompanied alien children in the "best interests of the child." (Mot. 11) (citing 8 U.S.C. 1232(c)(2)(A); 6 C.F.R. § 115.14(a)). But having entered the United States with her mother, L.C. was not "unaccompanied"—that is, a child for whom "no parent or legal guardian in the United States is available to provide care and physical custody," 6 U.S.C. 279(g)—nor was she a human trafficking victim.[6] Congress has rejected Defendant's theory that children apprehended by DHS in the company of their parents could be considered "unaccompanied" and placed in ORR custody when "their welfare is not at issue."[7] Because J.P. and L.C.

---

[6] *See Ms. L.*, 310 F. Supp. 3d at 1139 (explaining that "true 'unaccompanied alien children'" are those who arrive at the border without their parents, not those "detained with their parents at the border and who were thereafter separated from their parents"); *C.M.*, 2020 WL 1698191, at \*3 n.4 (rejecting Government's argument "that parents who are 'amenable to prosecution' under immigration statutes are 'unavailable to provide care or custody' to their children" requiring the children's transfer to ORR custody); *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2 (children "rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants . . . are not true unaccompanied minors within the meaning of the" TVPRA).

[7] *See* House Comm. on Appropriations, Dep't of Homeland Sec. Appropriations Bill, 2006: Report Together with Additional Views (to accompany H.R. 2360), 109th Cong., 1st Session, 2005, H. Rep. 109-79 (expressing an expectation that the Government would release families, use alternatives to detention, or detain families together in appropriate spaces).

arrived in the United States together, Defendant lacked the discretion it argues the TVPRA permits and, to the extent it designated L.C. an unaccompanied alien child, violated the law. *See* 6 U.S.C. 279(g).

Not only would it have been unlawful to designate L.C. an unaccompanied alien child, the Complaint does not allege the Government did so.[8]   Defendant attempts to introduce contrary allegations, asserting that L.C. was "rendered unaccompanied due to her mother being amenable to criminal prosecution."  (Mot. 8-9.)  That claim relies on facts outside the pleadings that cannot be considered at this stage.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Moreover, the Court must "accept[] the allegations of the complaint as true and afford[] plaintiffs the benefit of all favorable inferences that can be drawn from the alleged facts."  *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 109 F. Supp. 3d 1178, 1181 (D. Ariz. 2014) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)). The Government in any event fails to provide support for its contention that simply being amenable to prosecution renders a parent unavailable to care for her child.  (Mot. 8-9, n.4.)

Finally, the Government maintains that having "made the discretionary decision to refer J.P. for criminal prosecution and to detain her in a secure detention facility," it was required under federal law and the Flores Agreement to place L.C. in ORR custody away from J.P.  (Mot. 14, n.4.)  But again Defendant presupposes, without authority, that it had discretion to detain J.P. in a "secure detention facility" when doing so required separating her from her minor child.  Defendant's conclusion that separation was required is flawed. The *Flores* court explained that the *Ms. L.* injunction prohibiting family separations does not conflict with or require the Government to violate the Flores Agreement, which allows for

---

[8] While the Complaint does not allege that L.C. was designated a UAC, it does allege that Defendant had a practice, as documented in internal memos, of falsely designating children as unaccompanied.  Compl. ¶¶ 35-46.  As alleged, this practice involved separating children from their parents and then declaring them "unaccompanied" as a pretext to house them apart from their parents.  *Id.*  To the extent it is implied that Defendant deemed L.C. "unaccompanied," that designation was not in Defendant's discretion.  Thus the TVPRA could not have been a lawful basis for the separation.

the detention of families together, in family facilities, their release on parole or bond, and allows parents to waive their children's Flores rights to exercise their right to reunification under the injunction. *See Flores v. Sessions*, No. CV-85-4544 (DMG), 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018).

## II.    No Statute or Regulation Mandated Separating Plaintiffs and Defendant Did Not Act with Due Care

The due care exception bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). A two-part test determines whether the due care exception applies. *Welch v. U.S.*, 409 F.3d 646, 652 (4th Cir. 2005); s*ee, e.g., Ferguson v. United States*, No. 15-CV-1253 JM (DHB), 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016). Defendant must show that (1) the "statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow" and that (2) the official "exercised due care in following the dictates of th[e] statute or regulation." *Welch*, 409 F.3d at 652.

Defendant's argument that the due care exception shields it from liability resulting from its family separation policy has been uniformly rejected by this Court because "[a]ctions taken pursuant to executive policy are not shielded by the due care exception." *C.M.*, 2020 WL 1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 996; *A.I.I.L.*, 2022 WL 992543, at *5 ("Because none of the statutory provisions cited by the government expressly mandate enforcement of a family separation policy, the due care exception does not apply."); *F.R.*, No. 21-CV-00339-DLR, Dkt. 77 at 8-9; *see also P.G.*, No. CV-21-04457, Dkt. 44 ("The fact that the Government is now attempting to evade liability for a policy that is still being unwound . . . is not legally defensible."); *Nunez Euceda*, 2021 WL 4895748, at *4 ("Defendant fails to cite any statute or regulation that required Plaintiff and his children to be separated upon their arrival to the United States."); *A.F.P.*, 2022 WL 2704570, at *14-15. Defendant's argument fails here for the same reasons, including that the Government does not identify any statute or regulation that mandated Plaintiffs' separation. "Because

Plaintiff's detention was not the result of a statutorily prescribed course of action," the exception cannot apply. *Gonzalez v. United States*, No. CV-12-01912 (DMG), 2013 WL 942363, at \*3-4 (C.D. Cal. Mar. 11, 2013). Defendant also makes no effort to show it acted with due care.

### A. No Statute or Regulation Mandated Plaintiffs' Separation

The due care exception requires that government action be mandated, not merely authorized, by a statute or regulation. *Welch*, 409 F.3d at 652. Courts in this District apply the same standard.[9] *See A.P.F.*, 492 F. Supp. 3d at 995 (applying *Welch*'s two-part test).

The Government points to the TVPRA, which addresses Defendant's obligation to "transfer the custody" of a UAC to the care of ORR "not later than 72 hours after determining that such child is an [UAC]." (Mot. 14); 8 U.S.C. § 1232(b)(3). However, the TVPRA, as stated above in Section I.B, does not direct Defendant to forcibly remove children from their parents' custody. Defendant has not established—nor can it do so at this stage of the proceedings—that it even applied the TVPRA when it chose to separate L.C. from her mother or that L.C. was considered an unaccompanied minor such that the TVPRA could have applied. The authority to transfer custody of an unaccompanied child is not a mandate to forcibly remove children from their parents' custody.

No statute required Defendant to separate L.C. from J.P. As recently stated in *A.P.F.*, "family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation." 492 F. Supp. 3d at 995-996. Actions under executive orders and directives

---

[9] Defendant's assertion that its actions need only be "authorized" by a statute or regulation relies on a misreading of *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985). *Borquez* upheld a grant of summary judgment over plaintiffs' challenge to the government's delegation of its responsibility to care and maintain property on a dam, reasoning that government "[l]iability for duties delegated pursuant to statute is forbidden." *Id*. at 1052. As explained in *A.P.F.*, the *Borquez* plaintiffs' direct challenge to the government's statutory authority to delegate the entirety of its care and maintenance responsibilities is a particular type of challenge that the exception intended to prohibit. *A.P.F.*, 492 F. Supp. 3d at 995, n.2. By contrast, the families in *A.P.F.*, as here, are not challenging a statute's grant of authority to delegate the Government's responsibility (and thus liability) and are not challenging any statute at all. *Id*.

are not protected by the due care exception, which is relevant only when government employees are acting "in the execution of a statute or regulation." 28 U.S.C. § 2680(a). The Government separated Plaintiffs under nothing more than a policy deliberately designed to inflict emotional distress on migrants with the goal of deterring future asylum seekers. The due care exception does not apply where "a policy—not a statute or regulation"—mandated the conduct at issue. *Garcia-Feliciano v. United States*, No. 12-1959 (SCC), 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (citing *Welch*, 409 F.3d at 652).

**B.    The Separation of Children from Their Parents at the Hands of Government Agents Was Done Without Due Care**

Even if the Government had met the first prong of the due care exception, it must still show that it acted with "due care." *Welch*, 409 F.3d at 652. Defendant does not even reference the second prong of the due care exception, much less explain how the allegations of the Complaint show that it acted with due care. By failing to establish a required element of the due care exception, the Government waives its application. *See Save the Peaks Coal. v. U.S. Forest Serv.*, No. CV 09-8163 (PCT)(MHM), 2010 WL 3800896, at *2 (D. Ariz. Sept. 22, 2010) (arguments not raised in opening brief are waived).

"Due care" under § 2680(a) "implies at least some minimal concern for the rights of others." *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (quoting *Hatahley v. United States*, 351 U.S. 173, 181 (1956)). The Government did not act with even minimal concern when it separated J.P. and L.C. On the contrary, Defendant's officers subjected Plaintiffs to inhumane treatment. (*See* Compl. ¶¶ 3-5, 54, 57.) Plaintiffs were detained in freezing cells with little space to sleep, insufficient food and water, and without meeting their sanitary or medical needs. (*Id*. ¶ 54.) During the physical separation, L.C. sustained a significant injury requiring repeated medical attention (*id.* ¶¶ 61, 64, 66), and J.P. was deprived of information about her daughter's location and safety while the two were kept incommunicado (*id*. ¶¶ 8-9, 63, 76-78). These acts demonstrate the Government lacked any concern for the rights of J.P. and L.C.

## III. Plaintiffs' Tort Claims Satisfy the Broad Private Analog Inquiry

Plaintiffs establish subject-matter jurisdiction under the FTCA by showing that "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963); 28 U.S.C. § 1346(b). Plaintiffs satisfy that requirement by alleging claims for IIED, negligence, abuse of process, and loss of consortium, each of which would apply to private actors under Arizona law. The private analogue doctrine— which holds the Government liable "in the same manner and to the same extent as a private individual under like circumstances" (28 U.S.C. § 2674)—is interpreted broadly. *Indian Towing Co. v. United States*, 350 U.S. 61 (1955). Because the Government "'could never be exactly like a private actor,' [courts need only] 'find the most reasonable analogy' to private, tortious conduct." *A.P.F.*, 492 F. Supp. 3d at 994 (quoting *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016)). Accordingly, FTCA claims may proceed even as to immigration officers' uniquely governmental acts. *See Xue Lu v. Powell*, 621 F.3d 944, 947-50 (9th Cir. 2010).

The Government contends it has "not waived its sovereign immunity for such decisions because only the Federal Government has the authority to enforce federal law and make determinations concerning the detention of noncitizens." (Mot. 15.) But it is well-settled that the Government can be liable for activities over which it has exclusive authority. The government may be liable for the Coast Guard's failure to maintain a lighthouse, for example. *See Indian Towing*, 350 U.S. at 69-70. Or it can be liable for the confinement of inmates even though the confinement of inmates is a uniquely governmental function. *Muniz*, 374 U.S. at 159-62, 165-66. In short, "[e]ven if the conduct entails uniquely governmental functions, the court is to examine the liability of private persons in analogous situations." *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007).

J.P. and L.C.'s injuries arise from their separation at the hands of government officials. (*See, e.g.*, Compl. ¶¶ 1, 4, 8, 11, 59-63, 64-68, 70, 72.) Private individuals have been held liable in Arizona for IIED, negligence, abuse of process, and loss of consortium under similar circumstances, and the Government has been held liable to suit on nearly

13

identical facts in *C.M.*, 2020 WL 1698191, at *2, and *A.P.F.*, 492 F. Supp. 3d at 994-95.[10] Plaintiffs' IIED claim mirrors Arizona law based on "ample factual allegations suggesting that the government's separation of families was motivated by malice." *C.M.*, 2020 WL 1698191, at *2; (*see*, *e.g.*, Compl. ¶¶ 34, 41-42, 44, 48.)

Arizona law also recognizes that private persons owe a duty of care when acting in a caretaker capacity analogous to the Government's relationship to Plaintiffs here. *See, e.g., Sanders v. Alger*, 242 Ariz. 246, 249 (2017) (a caregiver owes a duty of reasonable care to their patients); *Broadbent by Broadbent v. Broadbent*, 184 Ariz. 74, 81 (1995) (parents owe a duty of care to their children); *Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112 (App. 1997) (schools have a duty not to subject students to risk of harm). Given these Arizona-law duties, Defendant's agents also had a duty not to negligently harm Plaintiffs while in custody, and their failure to do so supports a negligence claim under the FTCA. And Arizona law permits damages for the loss of a child's consortium when a caretaker's actions caused "significant interference with the normal relationship between parent and child." *Bickler v. Senior Lifestyle Corp.*, No. CV-09-00726-PHX-DGC, 2010 WL 2292985, at *6 (D. Ariz. June 8, 2010).

Defendant relies on a Second Circuit decision, *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988), for the premise that decisions to detain individuals are "quasi-adjudicative Actions" with no private analogue. (Mot. 16.) However, *Akutowicz* involved the revocation of the plaintiff's citizenship, explaining that such "quasi-legislative or quasi-adjudicative action by an agency of the Federal Government is action of the type that private

---

[10] *See, e.g., id.*; *Pankratz v. Willis*, 155 Ariz. 8, 10, 22 (App. 1987) (upholding IIED verdict in favor of parent whose in-laws facilitated and concealed the disappearance of parent's child); *Martinez v. United States*, No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562, at *11 (D. Ariz. July 10, 2018) (denying Government's summary judgment motion on IIED claim against CBP agents where those agents separated a family, threatened incarceration, and offered to release the plaintiff's children if he confessed); *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10, 2020) (recognizing viability of negligence claim brought under FTCA where plaintiffs alleged federal employees' placement of a prisoner in a certain cell was negligent).

persons could not engage in and hence could not be liable for under local law." 859 F.2d at 1125 (quoting *C.P. Chemical Co. v. United States*, 810 F.2d 34, 38 (2d Cir. 1987)). But detention decisions are distinguishable from a revocation of citizenship. The Second Circuit in *Liranzo* clarified this distinction and rejected an extension of *Akutowicz* to an immigration-related false arrest claim: "But in *Akutowicz*, there was no detention. The only action complained of was the removal of plaintiff's citizenship. Citizenship is a legal status, which only the federal government is capable of altering. A private individual cannot . . . cause injury to another's citizenship. But a private person is of course capable of falsely arresting another." *Liranzo v. United States*, 690 F.3d 78, 96 (2d Cir. 2012). Like in *Liranzo*, Plaintiffs are not challenging a revocation of their citizenship but that the Government violated duties that would also apply to private persons under Arizona law, had they mistreated and separated family members in their care.

The out-of-circuit authorities Defendant cites address a private analogue of "wrongful confinement," which is not at issue here. (Mot. 17.) *McGowan v. United States* involved a false imprisonment claim based on solitary confinement that the plaintiff analogized to the New York tort of wrongful confinement. 825 F.3d 118, 126 (2d Cir. 2016). The court found that the Government's ability to impose solitary confinement could not be analogized to a private person committing false imprisonment. *Id*. And *Buzzanca v. D.C.* and *Portillo v. United States*, which considered alleged miscalculations of the plaintiffs' time served as an incarcerated inmate, are also irrelevant to the claims in this Complaint. 523 F. Supp. 3d 64 (2021); No. 17-CV-00394, 2018 WL 523363 (D. Nev. Jan. 22, 2018).[11]

---

[11] The other cases the Government cites are likewise inapposite. *Elgamal v. United States* held there was no private analogue in Arizona for a negligence challenge to the adjudication of an application for adjustment of status to lawful permanent residence, a factual pattern unrelated to Plaintiffs' claims of forcible and prolonged family separation, *see* No. CV-13-00867-PHX-DLR, 2015 WL 13648070, at *3 (D. Ariz. July 8, 2015), and *Bhuiyan v. United States* does not involve Arizona law at all. *See* No. 14-cv-00013, 2017 WL 2837023, at *4 (D.N. Mar. I. June 30, 2017), *cert. denied*, 140 S.Ct. 1147 (2020) (applying the law of Vermont and the Northern Marianas Islands).

Plaintiffs do not assert false imprisonment resulting from wrongful detention, but rather that the intentional and negligent separation satisfied the elements of IIED, negligence, abuse of process, and loss of consortium claims. Courts within this circuit permit tort claims that, while arising in the course of detention, do not challenge the fact of detention itself. *See Martinez*, 2018 WL 3359562, at *11 (denying Government's summary judgment motion on IIED claim against CBP agents where those agents separated a family, threatened incarceration, and offered to release the plaintiff's children if he confessed); *see also Estate of Smith*, 2020 WL 1158552, at *1 (recognizing viability of negligence claim brought under FTCA where plaintiffs alleged federal employees' placement of a prisoner in a certain cell was negligent). The simple fact that the Plaintiffs were in detention when Defendant harmed them does not obviate any private-person analogue based on those acts. Private persons can be liable for intentional or negligent tortious conduct while someone is in their care.

## IV. Plaintiffs' Tort Claims Are Not Barred Merely Because Defendant's Tortious Conduct Also Happened to Infringe Plaintiffs' Constitutional Rights

Plaintiffs' IIED, negligence, abuse of process, and loss of consortium causes of action are tort claims, not constitutional ones, such as a *Bivens* or other civil rights claim for violation of due process. The Complaint alleges that the Government violated its tort duties, causing Plaintiffs harm. The fact that Defendant's tortious conduct also violated the Constitution does not convert Plaintiffs' claims into "constitutional torts." As *C.M.* and *A.P.F.* held, Defendant cannot "re-categorize" Plaintiffs' allegations about poor conditions as standalone claims and then call them impermissible constitutional torts. *See C.M.*, 2020 WL 1698191 at *4, n.5; *A.P.F.*, 492 F. Supp. 3d at 996-97.

The Government's reliance on *FDIC v. Meyer*, 510 U.S. 471 (1994), is unavailing. *Meyer* held that the plaintiff's *Bivens* claim is a "constitutional tort" not cognizable under the FTCA such that the FTCA does not provide the exclusive remedy. *Id*. at 477-78. The Court reasoned that a *Bivens* claim, in seeking to redress a constitutional violation, lacks a state-law analogue because it arises from the U.S. Constitution. *Id.* at 478. Plaintiffs here,

by contrast, assert no *Bivens* claim or other constitutional claim, relying instead on tort

violations with analogues under Arizona law.

Despite the absence of constitutional claims in the Complaint, the Government styles

Plaintiffs' allegations of inhumane treatment during detention as a "constitutional attack" on

the conditions of their confinement. (Mot. 18.) The Government's cases are distinguishable.

In *Aguilar*, the scope of the plaintiff's IIED claim was limited to constitutional allegations

regarding "general conditions, practices, rules, or restrictions of pretrial confinement."

*Aguilar v. United States*, No. 1:16-CV-048; 2017 WL 6034652, at *4 (S.D. Tex. June 7,

2017). Relying on Fifth Circuit precedent, *Aguilar* found that the "basis of" the plaintiff's

claims were complaints about pretrial confinement conditions and that a *Bivens* action was

thus the appropriate form of the claim. *Id.* (citing *Cook v. Tex. Dep't of Crim. Justice*

*Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994)).

In contrast to *Aguilar*, where the claims were based entirely on poor conditions,

Plaintiffs' allegations are based on Defendant's unlawful separation of families, including

the tortious acts of Government agents during their detention. Plaintiffs have not asserted

any claim based solely on the poor condition of the detention centers that constitutes a veiled

constitutional attack. *C.f. Thompson v. United States*, No. 1:14-CV-0894, 2015 WL

5567934, at *2 (M.D. Pa. Sept. 21, 2015) (prisoner's sole claim was the denial of his right

to petition the courts); *Sutter v. United States*, 17-CV-07245, 2019 WL 1841905, at *4 (C.D.

Cal. Mar. 12, 2019) (in addition to his *Bivens* claim, the federal prisoner also asserted

specific constitutional violations refashioned as "negligent failure to protect" claims). Tort

claims routinely proceed under the FTCA despite simultaneous constitutional violations.

*See e.g.*, *Nurse*, 226 F.3d at 1002 (FTCA claim based on the Government's promulgation of

discriminatory, potentially unconstitutional policies, can proceed past the motion to dismiss

stage); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) (plaintiff's tort claims

involving 1st and 4th Amendment violations may proceed); *Prisco v. Talty*, 993 F.2d 21, 26

n.14 (3d. Cir. 1993) (similar); *Limone v. United States*, 579 F.3d 79, 102 n.13 (1st Cir. 2009)

("[W]e do not view the FBI's constitutional transgressions as corresponding to the plaintiffs' causes of action—after all, the plaintiffs' claims are not *Bivens* claims.").

## V. Plaintiffs Allege Tortious Actions of Individual Government Employees and Do Not Rely Only on Institutional Acts of the Government As a Whole

The FTCA provides a waiver of the United States Government's sovereign immunity for tort claims arising out of the conduct of Government employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1); *United States v. Orleans*, 425 U.S. 807, 813–14 (1976) *See, e.g.*, *F.R.*, No. 221-CV-00339-DLR, Dkt. 77 at 7 (denying dismissal of claims "based on tortious misconduct by individual employees working for [Government] agencies"). The FTCA defines "government employee" to include "persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. The Government nevertheless argues that "a plaintiff cannot assert 'systemic' claims under the FTCA, but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment." (Mot. 19.)

It is unclear what the Government means when it refers to "systemic" claims or where the supposed prohibition against such claims springs from. The Government cites *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005), but that case merely holds that under the FTCA a corporation cannot be an "employee" of the Government, which is not a question at issue here. Defendant also cites *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), which noted that *Adams* is "not directly on point" to the issues in that case, dismissing a claim where the plaintiff's allegations were "too vague and conclusory" because, among other things, she had not "set forth the alleged acts or omissions of specific federal employees." *Id.*, at *5. Neither case discusses "systemic" claims.

Contrary to Defendant's assertions, Plaintiffs set forth acts attributable to Government agents and officials, both at the policy level and in executing that policy, causing actionable harm to Plaintiffs. Plaintiffs allege numerous decisions by Defendant's agents and officials regarding implementation of the family separation policy: DHS officials

considered a policy of separating parents with children arriving at the U.S.-Mexico border as a means of deterring asylum seekers (Compl. ¶ 34); Government officials at the highest levels, including the Assistant Secretary of HHS, knew of the trauma to children and parents that the policy would cause and embraced that result, believing that publicity about the harms would deter asylum-seeking families from immigrating to the United States (*id*. ¶¶ 41-42, 48); and CBP agents targeted parents who crossed the border with children. (*Id*. ¶ 44.) Individual agents forcibly separated parents and children, including J.P. and L.C., despite the trauma it caused and without providing information as to the possibility of reunification. (*See, e.g.*, *id*. ¶¶ 58-62, 68, 75.)

## VI. Arizona Law Does Not Shield Defendant's Independently Tortious Acts

The Government mischaracterizes Plaintiffs' alleged injuries as the result of their own purported criminal conduct. The torts alleged are not pled to be the result of Plaintiffs' alleged criminal conduct, however, but of the Government's actions in illegally separating Plaintiffs from one another, purposely isolating them from each other, and causing substantial, long-lasting injuries in the process. (*See* Compl. ¶¶ 4, 8-10.)

The Government relies on *Muscat v. Creative Innervisions LLC*, a case about a convicted sex offender who sued a group home for leaving him unsupervised, which allegedly led him to sexually assault a child, resulting in plaintiff's incarceration. 418 P.3d 967, 969 (App. 2014). Here, Plaintiffs were not criminally charged or incarcerated. So the comparison to *Muscat* stops before it begins. *Muscat* found that the plaintiff's alleged injuries were not "distinct from the consequences of his prison sentence," and "no properly-convicted criminal has a legally protected interest in being free from the inherent consequences of the resulting sentence." *Id*. at 971. The Government's forcible separation of Plaintiffs resulting in their inability to communicate with each other – much less causing of physical injury to L.C. – is not and cannot be "inherent consequences" of Plaintiffs' actions when it was the Government's unconstitutional and illegal act that caused such injuries. There is no analogy here to the plaintiff in *Muscat*.

Supervision and detention are in any event not the same. In *Muscat*, the plaintiff was placed into a group home after being convicted of child abuse, where representatives provided him with a "one-on-one supervision" plan that was to be in effect "at all times." *Id.* at 969. Plaintiffs here are not criminals, nor were they detained to keep society safe from their actions, as one would be if they were a convicted sexual offender. Plaintiffs were two individuals fleeing danger from their home – hardly the scenario from which society would need to be protected. Nor are Plaintiffs seeking redress from harms resulting from a criminal offense they perpetrated while in Defendant's detention, yet another reason any attempted analogy between *Muscat* and this case plainly fails.

## VII. Plaintiffs Allege the Elements of a Negligence Claim

*Twombly* and *Iqbal* require a complaint to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' exceptionally detailed Complaint meets that standard.

To state a negligence claim under Arizona law, a plaintiff must allege sufficient facts to support the following four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007). The Government argues that Plaintiffs do not allege an Arizona law imposing on it a duty of ordinary care.[12] (Mot. 21.) As explained above in Section III, there is a private analogue for negligence under Arizona law, including the existence of a duty of ordinary care. *See, e.g., Sanders*, 242 Ariz. at 249. Plaintiffs have alleged in great detail that Defendant owed them a duty of care; that it breached this duty; and that as a direct and proximate cause of this breach, Plaintiffs suffered

---

[12] Defendant also alleges that Plaintiffs fail to claim negligence on the part of any particular federal employee. Importantly, as explained above in Section V, Defendant has identified no requirement under the FTCA that Plaintiffs identify the individual employees that allegedly harmed them.

substantial damages.  (Compl. ¶¶ 25-28, 34-48, 49-89, 93-96.)  These allegations adequately state a claim for negligence.  *See DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 11 (1985) (Arizona law imposes duty where a person "takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection" (quoting Restatement (Second) of Torts § 314A (1965)); *see also A.P.F.*, 492 F. Supp. 3d. at 999 (finding a claim of negligence to be sufficiently plead in a similar case involving family separation).  "Federal immigration officials, too, are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care."  *C.M.*, 2020 WL 1698191, at *2.

By relying on a sufficiency of pleading standard for one claim as the basis for moving to dismiss the claim, the Government attempts to "parse the Complaint" in a way that other courts in this District have previously rejected.  *C.M.*, 2020 WL 1698191, at *4.  This Court should similarly reject Defendant's argument here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, as in each case in this circuit addressing these same issues, the Court deny Defendant's motion to dismiss.[13]

---

[13] Plaintiffs reserve all rights to seek appropriate relief, including sanctions, for the Government's bringing of its Motion based on arguments that have been repeatedly rejected by courts in this circuit and elsewhere.

RESPECTFULLY SUBMITTED this 25th day of July, 2022.

/s/ Daniel B. Pasternak
Daniel B. Pasternak
SQUIRE PATTON BOGGS (US) LLP
2325 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone:     602.528.4187
Facsimile:      602.253.8129
daniel.pasternak@squirepb.com

Manuel F. Cachán (*pro hac vice*)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone:     310.557.2900
Facsimile:      310.557.2193
mcachan@proskauer.com

Hena M. Vora (*pro hac vice*)
Timothy E. Burroughs*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone:     212.969.3000
Facsimile:      212.969.2900
hvora@proskauer.com
tburroughs@proskauer.com

Sara Van Hofwegen (*pro hac vice*)
Joel Frost-Tift (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone:     213.385.2977
Facsimile:      212.385.9089
svanhofwegen@publiccounsel.org
jfrost-tift@publiccounsel.org

*Attorneys for Plaintiffs*

*  Pro hac vice application forthcoming*

22

## Certificate of Service

I certify that on this 25th day of July, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all parties and counsel of record by operation of the Court's electronic filing system. The Parties may access this filing through the Court system.

*/s/ Norma Davis*
Norma Davis