Daniel B. Pasternak (SBN 023751)
SQUIRE PATTON BOGGS (US) LLP
2325 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone:    602.528.4187
Facsimile:    602.253.8129
daniel.pasternak@squirepb.com

Manuel F. Cachán (*pro hac vice*)
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone:    310.557.2900
Facsimile:    310.557.2193
mcachan@proskauer.com

Hena M. Vora (*pro hac vice*)
Timothy E. Burroughs (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone:    212.969.3000
Facsimile:    212.969.2900
hvora@proskauer.com
tburroughs@proskauer.com

Joel Frost-Tift (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone:    213.385.2977
Facsimile:    212.385.9089
jfrost-tift@publiccounsel.org

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| J.P. and L.C.,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | No. 2:22-cv-00683-MTL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

LEGAL STANDARD .............................................................................................. 4

ARGUMENT ......................................................................................................... 4

I.     Defendant Cannot Establish that the Discretionary Function
Exception Applies ......................................................................................... 4

        A.     Defendant Did Not Have "Discretion" to Violate the Constitution or
Federal Mandates in Separating and Confining J.P. and L.C. ..................... 5

        B.     The Government Had No Discretion to Declare L.C.
"Unaccompanied" or Send Her to ORR ..................................................... 9

II.    No Statute or Regulation Mandated Separating Plaintiffs and Defendant Did
Not Act with Due Care ............................................................................... 11

        A.     No Statute or Regulation Mandated Plaintiffs' Separation ........................... 12

        B.     The Separation of Children from Their Parents at the Hands of
Government Agents Was Done Without Due Care ...................................... 13

III.   Plaintiffs' Tort Claims Satisfy the Broad Private Analog Inquiry ......................... 14

IV.   Plaintiffs' Tort Claims Are Not Barred Merely Because Defendant's
Tortious Conduct Also Happened to Infringe Plaintiffs' Constitutional Rights ...... 18

V.    Plaintiffs Allege Tortious Actions of Individual Government Employees and
Do Not Rely Only on Institutional Acts of the Government as a Whole ................. 20

VI.   Arizona Law Does Not Shield Defendant's Independently Tortious Acts ............. 21

VII.  Plaintiffs Allege the Elements of a Negligence Claim ...................................... 22

CONCLUSION ..................................................................................................... 23

i

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A.E.S.E. v. United States*,
No. 21-CV-0569 RB-GBW, 2022 WL 4289930, (D.N.M. Sept. 16, 2022) ............... 6, 7

*A.F.P. v. United States*,
No. 21-CV-00780, 2022 WL 2704570 (E.D. Cal. July 12, 2022) ........................ *passim*

*A.I.I.L. v. Sessions*,
No. CV-19-00481, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) ................... 1, 5, 7, 8, 13

*A.P.F. v. United States*,
492 F. Supp. 3d 989 (D. Ariz. 2020) ...................................................... *passim*

*Adams v. United States*,
420 F.3d 1049 (9th Cir. 2005) ....................................................................21

*Aguilar v. United States*,
No. 1:16-CV-048, 2017 WL 6034652 (S.D. Tex. June 7, 2017) ...................................20

*Akutowicz v. United States*,
859 F.2d 1122 (2d Cir. 1988) .................................................................. 17, 18

*Arredondo Rodriguez v. United States*,
No. 22-CV-02845, ECF No. 31 (C.D. Cal. Dec. 22, 2022) .........................................1-2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................23

*Bailey v. United States*,
623 F.3d 855 (9th Cir. 2010) ..........................................................................8

*B.A.D.J. v. United States*,
No. CV-21-00215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022) .................................1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................23

*Berkovitz v. United States*,
486 U.S. 531 (1988) ....................................................................................5

ii

*Bhuiyan v. United States*,
No. 14-cv-00013, 2017 WL 2837023 (D.N. Mar. I. June 30, 2017),
*cert. denied*, 140 S. Ct. 1147 (2020) ................................................................18

*Bickler v. Senior Lifestyle Corp.*,
No. CV-09-00726-PHX-DGC, 2010 WL 2292985 (D. Ariz. June 8, 2010) .............17

*Borquez v. United States*,
773 F.2d 1050 (9th Cir. 1985) .......................................................................13

*Broadbent by Broadbent v. Broadbent*,
184 Ariz. 74 (1995) ............................................................................... 13, 17

*Buzzanca v. D.C.*,
523 F. Supp. 3d 64 (2021) .............................................................................18

*C.M. v. United States*,
No. 19-CV-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ........................ *passim*

*C.P. Chemical Co. v. United States*,
810 F.2d 34 (2d Cir. 1987) ............................................................................17

*Cook v. Tex. Dep't of Crim. Justice Transitional Planning Dep't*,
37 F.3d 166 (5th Cir. 1994) ...........................................................................20

*D.J.C.V. v. United States*,
No. 20 CIV. 5747 , 2022 WL 1912254 (S.D.N.Y. June 3, 2022) ...........................6

*DeMontiney v. Desert Manor Convalescent Ctr. Inc.*,
144 Ariz. 6 (1985) .......................................................................................24

*Dugard v. United States*,
835 F.3d 915 (9th Cir. 2016) .........................................................................16

*E.C.B v. United States*,
No. CV-22-00915, ECF No. 24 (D. Ariz. Nov. 8, 2022) .....................................1

*Elgamal v. United States*,
No. CV-13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015) ...........................18

*E.S.M. v. United States*,
No. CV-21-00029, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ...........................1

*Estate of Smith v. Shartle*,
No. CV-18-00323, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) ................. 16-17, 19

iii

*F.R. v. United States*,
   No. 21-CV-00339, ECF No. 77 (D. Ariz. July 22, 2022)............................... 1, 7, 13, 21

*FDIC v. Meyer*,
   510 U.S. 471 (1994)........................................................................................................19

*Ferguson v. United States*,
   No. 15-CV-1253 JM , 2016 WL 4793180 (S.D. Cal. Sept. 14, 2016) .........................12

*Flores v. Sessions*,
   2018 WL 4945000 (C.D. Cal. July 9, 2018)..................................................................12

*Franklin Sav. Corp. v. United States*,
   180 F.3d 1124 (10th Cir. 1999) .......................................................................................4

*Fuentes-Ortega v. United States*,
   No. CV-22-00449, 2022 WL 16924223 (D. Ariz. Nov. 14, 2022) ..................................1

*Garcia-Feliciano v. United States*,
   No. 12-1959 (SCC), 2014 WL 1653143 (D.P.R. Apr. 23, 2014) ..................................14

*Gipson v. Kasey*,
   214 Ariz. 141 (2007)......................................................................................................23

*Gonzalez v. United States*,
   No. CV-12-01912 , 2013 WL 942363 (C.D. Cal. Mar. 11, 2013)..................................13

*Hatahley v. United States*,
   351 U.S. 173 (1956)........................................................................................................15

*Hill v. Safford Unified Sch. Dist.*,
   191 Ariz. 110 (App. 1997)..............................................................................................17

*In re Baker*,
   693 F.2d 925 (9th Cir. 1982) ...........................................................................................8

*Indian Towing Co. v. United States*,
   350 U.S. 61 (1955)..........................................................................................................15

*J.S.R. by and through J.S.G. v. Sessions*,
   330 F. Supp. 3d 731 (D. Conn. 2018)...............................................................................6

*Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*,
   319 F. Supp. 3d 491 (D.D.C. 2018) ...........................................................................6, 10

iv

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ...................................................................10

*Lee v. United States*,
    No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept.
    18, 2020) ...................................................................................................21

*Limone v. United States*,
    579 F.3d 79 (1st Cir. 2009).......................................................................20

*Liranzo v. United States*,
    690 F.3d 78 (2d Cir. 2012)................................................................... 17, 18

*Martinez v. United States*,
    No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562 (D. Ariz. July
    10, 2018) .......................................................................................... 16, 19

*McGowan v. United States*,
    825 F.3d 118 (2d Cir. 2016) ......................................................................18

*Mejia-Mejia v. ICE*,
    No. CV 18-1445, 2019 WL 4707150 (D.D.C. Sept. 26, 2019) .......................6

*Ms. L. v. U.S. Immigration & Customs Enf't*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018),
    *modified by* 330 F.R.D. 284 (S.D. Cal. 2019)..................................... 7, 11, 12

*Muscat v. Creative Innervisions LLC*,
    418 P.3d 967 (App. 2014)....................................................................... 22, 23

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
    527 F.2d 1252 (2d Cir. 1975) ....................................................................15

*Nunez Euceda v. United States*,
    No. 20-CV-10793V, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) .................... 1, 7, 13

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) ......................................................... 5, 9, 11, 20

*O'Toole v. United States*,
    295 F.3d 1029 (9th Cir. 2002) .....................................................................4

*P.G. v. United States*,
    No. CV-21-04457, ECF No. 44 (N.D. Cal. May 10, 2022)................................. 1, 7, 13

v

*Pankratz v. Willis*,
    155 Ariz. 8 (App. 1987)..................................................................................16

*Peña Arita v. United States*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ...................................................... 8, 9

*Portillo v. United States*,
    No. 17-CV-00394, 2018 WL 523363 (D. Nev. Jan. 22, 2018) .....................18

*Prescott v. United States*,
    973 F.2d 696 (9th Cir. 1992) .........................................................................4

*Prisco v. Talty*,
    993 F.2d 21 (3d. Cir. 1993) .........................................................................20

*Raz v. United States*,
    343 F.3d 945 (8th Cir. 2003) .......................................................................20

*Rosenbaum v. Washoe Cnty.*,
    663 F.3d 1071 (9th Cir. 2011) .......................................................................7

*Sanders v. Alger*,
    242 Ariz. 246 (2017)............................................................................. 17, 24

*Save the Peaks Coal. v. U.S. Forest Serv.*,
    No. CV 09-8163, 2010 WL 3800896 (D. Ariz. Sept. 22, 2010)....................15

*Sutter v. United States*,
    17-CV-07245, 2019 WL 1841905 (C.D. Cal. Mar. 12, 2019) .....................20

*Tekle v. United States*,
    511 F.3d 839 (9th Cir. 2007) .......................................................................16

*Thompson v. United States*,
    No. 1:14-CV-0894, 2015 WL 5567934 (M.D. Pa. Sept. 21, 2015)...............20

*United States v. Muniz*,
    374 U.S. 150 (1963)............................................................................. 15, 16

*United States v. Orleans*,
    425 U.S. 807 (1976)....................................................................................21

*United States v. Olson*,
    546 U.S. 43 (2005)........................................................................................4

vi

*Wakefield v. Thompson*,
　　177 F.3d 1160 (9th Cir. 1999) ................................................................. 21, 24

*Webster v. Fall*,
　　266 U.S. 507 (1925).....................................................................................8

*Welch v. United States*,
　　409 F.3d 646 (4th Cir. 2005) ............................................................... , 13, 14

*Wong Wing Fai Co., S.A. v. United States*,
　　840 F.2d 1462 (9th Cir. 1988) ....................................................................6

*Xue Lu v. Powell*,
　　621 F.3d 944 (9th Cir. 2010) .....................................................................16

STATUTES

6 U.S.C. § 279(g)..........................................................................................10

8 U.S.C. § 1232(b).........................................................................................10

8 U.S.C. § 1232(c)(2)(A)................................................................................11

28 U.S.C. § 1346(b) ................................................................................... 3, 15

28 U.S.C. § 1346(b)(1) .............................................................................. 4, 21

28 U.S.C. § 2671 ...........................................................................................21

28 U.S.C. § 2674 ...........................................................................................15

28 U.S.C. § 2680(a) .................................................................................. 12, 14

OTHER AUTHORITIES

6 C.F.R. § 115.14(a) ......................................................................................11

House Comm. on Appropriations, Dep't of Homeland Sec. Appropriations
　　Bill, 2006: Report Together with Additional Views (to accompany H.R.
　　2360), 109th Cong., 1st Session, 2005, H. Rep. 109-79................................11

1

**PRELIMINARY STATEMENT**

Plaintiffs J.P. and L.C. suffered severe trauma under Defendant's policy of separating children from their migrant parents to dissuade others from seeking asylum in the United States.  Defendant denies responsibility for its actions and asks this Court to dismiss Plaintiffs' claims based on arguments that judges in this judicial circuit have rejected no fewer than twelve times.  In each of those cases, the courts found that victims of Defendant's family separation policy could assert tort claims based on Defendant's separation of children who were not "unaccompanied" by their parents—acts that violated the Constitution and federal mandates.[1]

Plaintiffs allege in their First Amended Complaint that Defendant's acts constituted intentional infliction of emotional distress, negligence, abuse of process, and loss of consortium between a parent and a child.  Defendant waived sovereign immunity under the Federal Tort Claims Act for these claims, and each has state law analogues.

As it has done in every case to date, Defendant argues in its motion to dismiss that an exception to FTCA jurisdiction applies.  Defendant however does not and cannot meet its burden.

Defendant's agents lacked the discretion to violate Plaintiffs' constitutional rights to family integrity.  The Government argues that Plaintiffs' claims fall within the discretionary function exception to the FTCA because it has discretion to "enforce[] federal

---

[1] *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020); *C.M. v. United States*, No. 19-CV-05217, 2020 WL 1698191, (D. Ariz. Mar. 30, 2020); *Nunez Euceda v. United States*, No. 20-CV-10793V, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021); *A.I.I.L. v. Sessions*, No. CV-19-00481, 2022 WL 992543, (D. Ariz. Mar. 31, 2022); *P.G. v. United States*, No. CV-21-04457, ECF No. 44 (N.D. Cal. May 10, 2022)  *F.R. v. United States*, No. 21-CV-00339, ECF No. 77  (D. Ariz. July 22, 2022); *A.F.P. v. United States*, No. 21-CV-00780, 2022 WL 2704570 (E.D. Cal. July 12, 2022); *B.A.D.J. v. United States*, No. CV-21-00215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022); *E.S.M. v. United States*, No. CV-21-00029, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022); *E.C.B. v. United States*, No. CV-22-00915 ECF No. 24 (D. Ariz. Nov. 8, 2022); *Fuentes-Ortega v. United States*, No. CV-22-00449, 2022 WL 16924223 (D. Ariz. Nov. 14, 2022); *Arredondo Rodriguez v. United States*, No. 22-CV-02845, ECF No. 31  (C.D. Cal. Dec. 22, 2022); discussed herein.

criminal and immigration law," "exercise . . . prosecutorial discretion," and "arrange for appropriate places of detention."  (Mot. at 2, 9, 11.)  But Plaintiffs do not challenge the Government's prosecutorial discretion.  Plaintiffs do not argue that there is anything inherently tortious about the Government enforcing its laws, making prosecutorial decisions, transferring custody of unaccompanied children in detention, or deciding where to house detainees.  Instead, Plaintiffs allege that Government officials engaged in conduct that falls *outside* of the discretionary function by forcibly separating Plaintiffs J.P. and L.C. without explanation; refusing to provide Plaintiffs information about their family members' whereabouts or well-being; failing to establish tracking procedures; and intentionally prolonging Plaintiffs' separate detention, all in a manner designed to increase Plaintiffs' emotional distress.  (FAC ¶¶ 59-63, 68, 74-75, 78-80.)  The Government does not address that specific conduct.

Defendant also claims that Plaintiffs' tort claims are barred because they seek to redress constitutional violations.  However, the Government cannot escape liability for violating its tort duties to Plaintiffs merely because its agents *also* violated the Constitution.

Defendant's remaining arguments are similarly flawed.  The FAC does not plead "institutional" torts, and the FAC pleads acts on the part of numerous individual Government officials and agents.  The one case on which the Government relies to suggest that Plaintiffs are themselves responsible for the harm they suffered is inapposite on its face, involving a convicted sex offender.  Finally, the FAC is replete with allegations of breaches of the Government's duty of care to Plaintiffs during their detention.  The Government's motion should be denied.

## BACKGROUND

Plaintiff J.P. and her then sixteen-year-old daughter, L.C., fled Guatemala in May 2018 to escape violence.  (FAC ¶ 3.)  J.P. spoke only Q'eqchi', a Mayan language rarely spoken outside of Guatemala, and could not read or write.  (*Id.* ¶¶ 2, 51.)  After leaving her village, J.P. was dependent on her daughter to communicate—L.C., although she could not

speak English, was fluent in the Spanish language.  (*Id.*)  Shortly after crossing the border at San Luis, Arizona, J.P. and L.C. were apprehended by U.S. Customs and Border Patrol ("CBP") officers.  (*Id.* ¶ 53.)  While detained, J.P. and L.C. witnessed CBP officers forcibly separating children from their parents.  (*Id.* ¶ 57.)  J.P. and L.C. became terrified they too would be separated.  (*Id.* ¶ 58.)  They were.

On about May 20, 2018, a CBP officer told L.C. she would be taken from her mother.  (FAC ¶ 59.)  Both J.P. and L.C. began to cry when the CBP officer came to take L.C.  (*Id.* ¶¶ 59-60.)  As she was pulled away from her mother, L.C. fainted and fell face-first onto a concrete floor.  (*Id.* ¶ 60.)  L.C.'s face bled while J.P. watched, unable to help her daughter.  (*Id.* ¶ 61.)  It would take a full month for J.P. to learn her daughter's whereabouts or physical condition and another month for mother and daughter to be reunited.  (*Id.* ¶¶ 63, 80-81.)  J.P. and L.C. were never charged with a crime, nor was J.P. ever found unfit to parent L.C.  (*Id.* ¶ 83.)  No law or regulation required the Government to separate J.P. and L.C.  (*Id.* ¶ 91.)

J.P. and L.C. were among the victims of an unlawful policy intended to harm them and others like them in order to discourage families from seeking asylum in the United States.  (FAC ¶ 5.)  As a result of the intentional, reckless, and negligent acts of Defendant's officials, Plaintiffs suffered physical, mental, and emotional harm.  (*Id.* ¶¶ 84-89.)

Defendant's conduct violated the Constitution and multiple legal obligations.  (FAC ¶¶ 90-102.)  First, the Government violated the Supreme Court-recognized right to family integrity, which applies to citizens and non-citizens alike.  (*Id.* ¶¶ 92-93.)  Second, the conditions of Plaintiffs' confinement violated the Constitution's mandate, CBP mandatory polices,[2] and the *Flores* Agreement,[3] which require the Government to meet the basic human needs of those in its custody.  (*Id.* ¶¶ 94-100.)  Third, the Government violated

---

[2] The FAC describes violations of CBP's National Standards on Transport, Escort, Detention, and Search ("TEDS Standards").  (FAC ¶ 94, 95, 98, 99.)

[3] (*See* FAC ¶¶ 28, 100, n.43.)

3

applicable child welfare standards set forth by the Office of Refugee Resettlement. (*Id.* ¶ 101.)

## LEGAL STANDARD

The FTCA permits the Government to be found liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)). The FTCA's waiver of sovereign immunity contains a number of exceptions. But because the FTCA is a remedial statute, those exceptions must be read narrowly, *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002), and the Government bears the burden of proving they apply, *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992) (citing 28 U.S.C. § 1346(b)). To avoid dismissal under the FTCA's exceptions, Plaintiffs need only "allege facts that place [their] claim facially outside of the exception." *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999).

## ARGUMENT

## I.  Defendant Cannot Establish that the Discretionary Function Exception Applies

The Government argues that its actions are protected by the FTCA's discretionary function exception, which bars claims regarding conduct that (1) "involves an element of judgment or choice," and (2) is "based on considerations of public policy." *Berkovitz v. United States,* 486 U.S. 531, 536-37 (1988). But the discretionary function exception "does not shield unconstitutional Government conduct," and it has been repeatedly established that family separation under the Government's policy at a minimum "may have violated" constitutional rights, making dismissal improper. *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *see, e.g.*, *B.A.D.J.*, 2022 WL 11631016, at *3. The Government chooses how strictly to enforce immigration laws and whether to criminally prosecute people who cross the border, but cannot violate the Constitution, which "can limit the

4

discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Nurse*, 226 F.3d at 1002 n.2.  Even if the Government could establish on the face of the pleadings that Plaintiffs' separation and the treatment of J.P. and L.C. was constitutional—which it cannot—it lacked discretion to unlawfully transfer L.C. to ORR custody, separating her from her mother, because she was not "unaccompanied."

     **A.**     **Defendant Did Not Have "Discretion" to Violate the Constitution or Federal Mandates in Separating and Confining J.P. and L.C.**

Courts in this District, and more broadly within this Circuit, have held without exception that claims arising from the Government's separation of immigrant families fall outside the discretionary function exception.  "Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiff." *A.P.F.*, 492 F. Supp. 3d at 996; *see, e.g.*, *A.I.I.L.*, 2022 WL 992543, at *4.

That rule is in line with the decisions of other district courts around the country. *E.g.*, *A.E.S.E. v. United States*, No. 21-CV-0569, 2022 WL 4289930, at *10-13 (D.N.M. Sept. 16, 2022); *D.J.C.V. v. United States*, No. 20 CIV. 5747, 2022 WL 1912254, at *10 (S.D.N.Y. June 3, 2022).  The Government "directly and substantially burden[s]" a plaintiff's constitutional right "to family integrity" when it "continu[es] to detain" her "in separate facilities for many weeks with only periodic phone calls," which is precisely what the FAC alleges. *Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*, 319 F. Supp. 3d 491, 501 (D. D.C. 2018).  In at least one case, the Government has "*agree[d]* that a constitutional violation occurred when the [g]overnment separated children from their parents." *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741 (D. Conn. 2018) (emphasis added).

Nor can the discretionary function exception shield the Government's deprivation of Plaintiffs' substantive due process rights to family integrity.[4]   "Because the [discretionary function exception] stems from an exemption to a waiver of sovereign immunity for tort claims, the doctrine, when applicable, applies only to decisions alleged to be negligent, not those alleged to be violative of due process." *Wong Wing Fai Co., S.A. v. United States*, 840 F.2d 1462, 1470 n.18 (9th Cir. 1988).[5]   "[The] substantive due process right to family integrity . . . is well established." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011).   And in a related suit brought on behalf of a class of migrant parents, the Government's practice of separating families was found likely to violate parents' due process rights. *Ms. L. v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1144–46 (S.D. Cal. 2018), *modified by* 330 F.R.D. 284 (S.D. Cal. 2019); *see also*. As *Ms. L.* reasons:

> A practice of this sort implemented in this way is likely to be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience, interferes with rights implicit in the concept of ordered liberty[,] and is so brutal and offensive that it does not comport with traditional ideas of fair play and decency.

*Id.* at 1145-46 (alteration in original) (internal citations and quotations omitted).

The discretionary function exception also does not protect Government acts that violate clearly established federal mandates, such as the TEDS Standards and the *Flores*

---

[4] Defendant's citation to *Mejia-Mejia v. ICE* does not support its contention that prosecutorial discretion via executive policy can create a discretionary function exception to FTCA claims.   *Mejia* addresses only whether *Bivens* claims may be expanded to raise constitutional challenges to executive powers "already subject to extensive Congressional action."  No. CV 18-1445, 2019 WL 4707150, at *5 (D. D.C. Sept. 26, 2019) (dismissing *Bivens* claim in part due to separation-of-powers concerns).

[5] *See D.J.C.V. v. United States*, No. 20 CIV. 5747, 2022 WL 1912254, at *12, *15-16 (S.D.N.Y. June 3, 2022) (collecting cases) ("Assuming that the Government separated G.C. and D.J.C.V. pursuant to the Zero Tolerance policy, this action would not fit within the [discretionary function exception]. . . .  [P]laintiffs plausibly allege that their constitutional rights—to due process under the Fifth Amendment—were violated.").

6

Agreement, which "set forth explicit minimal requirements regarding the conditions under which detainees may be held." *A.E.S.E.*, 2022 WL 4289930, at *10-11.  Government officers lack "discretion to deny Plaintiffs [the] basic requirements" of these mandates. *Id.*

J.P. and L.C. allege their constitutional rights to family integrity were violated. They were separated by Government agents without explanation, FAC ¶¶ 59-63, in clear violation of recognized constitutional rights, *id.* ¶¶ 92, 97.  During the first four weeks of their forced separation, Government agents kept J.P. and L.C. unaware of each other's location or wellbeing.  (*Id.* ¶¶ 68, 75-77.)  Plaintiffs each were subjected to "harsh and cruel treatment [while] in custody."  (*Id.* ¶ 96.)  J.P. and L.C. were kept in a freezing cold room, deprived of adequate food, clean drinking water, adequate bedding, and sufficient space to sleep, conditions so deplorable they violate the constitutional mandate that the government meet the basic human needs of anyone in its custody.  (*Id.* ¶ 97.)  The plaintiffs in many of the other family separation cases, such as *C.M.*, *A.P.F.*, *A.I.I.L.*, *F.R.*, *Nunez Euceda*, *P.G.*, and *A.F.P.*, all brought materially identical allegations.  Here as in those cases, the allegations show that Defendant violated the Constitution—or at least that its actions "may have been" unconstitutional, which is all that is required.  *See Nurse*, 226 F.3d at 1002 n.2; *see, e.g.*, *A.I.I.L*, 2022 WL 992543, at *4 (finding Plaintiffs' allegations regarding misconduct arising out of the separations, confinement conditions, and infrequency of communication between parent and child sufficient to plead violation of constitutional rights).

Defendant's reliance on a single out-of-Circuit case, *Peña Arita v. United States*, dismissing tort claims arising from the separation of families at the border in the face of abundant contrary in-Circuit authority the Government "acknowledges" (Mot. at 10, 14), is misplaced.  470 F. Supp. 3d 663, 684 (S.D. Tex. 2020).  *Peña Arita* was decided under the Fifth Circuit rule that it is a *plaintiff's* burden to allege the discretionary function exception *does not* apply.  *See id.*  In the Ninth Circuit, by contrast, "[t]he [Government] bears the burden of proving" the discretionary function exception *does* apply.  *Bailey v.*

7

1  *United States*, 623 F.3d 855, 859 (9th Cir. 2010).  The plaintiff in *Peña Arita* also did not

2  raise, and the court did not address, the government's lack of discretion to implement and

3  execute the family separation policy as a constitutional matter.  470 F. Supp. 3d at 686-87.

4  *Peña Arita* did not test whether the plaintiffs had sufficiently alleged facts to meet their

5  pleading burden of showing potential constitutional violations.  Cases are not precedent for

6  issues they do not discuss.  *E.g.*, *Webster v. Fall*, 266 U.S. 507, 511, (1925); *In re Baker*,

7  693 F.2d 925, 925–26 (9th Cir. 1982).  Finally, application of the discretionary function

8  exception in *Peña Arita* turned on the Government's purported prosecutorial discretion to

9  charge the plaintiff, not to separate the plaintiff from his family.  470 F. Supp. 3d at 686-

10  87.[6]  But Plaintiffs have not pleaded that they were prosecuted, much less that they were

11  separated under some exercise of prosecutorial judgment.  The Government acknowledges

12  as much by arguing that J.P. was merely "amenable" to prosecution.  (Mot. at 8.)

13  Defendant next urges the Court to find that Plaintiffs' identified federal mandates

14  are insufficient to bar the discretionary function exception.  (Mot. at 14-15.)  Defendant

15  acknowledges that under *Nurse*, "district courts in this [C]ircuit have, under similar

16  circumstances, rejected" this argument.  (*Id.*)  The Government cannot justify departing

17  from those holdings.  CBP's policies include "maintain[ing] family unity to the greatest

18  extent operationally feasible" and "consider[ing] the best interest of the juvenile at all

19  decision points beginning at the first encounter and continuing through processing,

20  detention, transfer, or repatriation."  (FAC ¶¶ 94-95.)  Plaintiffs' allegations in their FAC

21  make clear that the Government violated these policies during its detention and separation

22  of J.P. and L.C.  (*Id.*)

23

24  _____

25  [6]  The Government argues that *Peña Arita* "agreed" that "the policy itself and its
implementation by officers in the field are discretionary."  (Mot. at 10.)  While the *Peña
26  *Arita* court "agree[d] with the United States" that the discretionary function exception
applied, its reasoning centered on prosecutorial judgment under the Zero Tolerance
27  Memorandum.  It did not conclude that family separations other than those of the plaintiff
in that case were necessarily discretionary.  *See* 470 F. Supp. 3d at 686.

28

The discretionary function exception represents the careful balance struck by Congress between providing compensation for wrongful actions of Government employees, on the one hand, and protecting officials' legitimate policy prerogatives, on the other.  *See Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993).  The Government urges the Court to view the actions of its officers, in clear violation of Plaintiffs' constitutional rights and federal mandates, as "consequences of discretionary decision-making."  (Mot. at 15.)  That is not how the discretionary function works.  Although Defendant had prosecutorial discretion to charge J.P. with a crime, that discretion did not then give it *carte blanche* to violate proscribed federal mandates like the TEDS Standards and *Flores* Agreement, much less the Constitution.

### B.   The Government Had No Discretion to Declare L.C. "Unaccompanied" or Send Her to ORR

The Department of Health and Human Services, of which ORR is a part, has statutory authority for the custody and care only of *unaccompanied* migrant children.  *See* 6 U.S.C. § 279(g).  L.C. was *accompanied* by her mother, J.P., who was never criminally prosecuted and was available to care for her child.  (FAC ¶¶ 49, 51-54, 83.)  Under 6 U.S.C. § 279(g), the Government could not designate L.C. an "unaccompanied alien child" when a fit parent was available to care for her.[7]  It therefore lacked discretion under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. 1232(b), to take L.C. from her mother.

---

[7] *See Ms. L.*, 310 F. Supp. 3d at 1139 (explaining that "true 'unaccompanied alien children'" are those who arrive at the border without their parents, not those "detained with their parents at the border and who were thereafter separated from their parents"); *C.M.*, 2020 WL 1698191, at *3 n.4 (rejecting Government's argument "that parents who are 'amenable to prosecution' under immigration statutes are 'unavailable to provide care or custody' to their children" requiring the children's transfer to ORR custody); *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2 (children "rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants . . . are not true unaccompanied minors within the meaning of the" TVPRA).

To cover for this lack of authority over L.C., an accompanied child, the Government offers that J.P.'s amenability to prosecution rendered her unavailable.  (Mot. at 8-9.)  But that claim assumes facts outside the pleadings that cannot be considered at this stage, because "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).   Congress has in any case rejected Defendant's theory that children apprehended by CBP in the company of their parents can be considered "unaccompanied" and placed in ORR custody when "their welfare is not at issue."[8] Tellingly, the Government fails to provide support for its contention that simply being amenable to prosecution renders a parent unavailable to care for her child.  (Mot. at 8-9, n.4.).  Amenability to prosecution does not make a parent disappear.[9]

Defendant also insinuates that it had discretion to separate J.P. from L.C., as she bled while unconscious on the floor, because such separation was in "the best interests of the child" within the meaning of the TVPRA.   (Mot. at 11) (citing 8 U.S.C. § 1232(c)(2)(A); 6 C.F.R. § 115.14(a)).  But as explained above, only an unaccompanied child, not a child with her mother like L.C., is subject to the TVPRA's "best interests of the child" determination.  Furthermore, the FAC alleges that Defendant's agents physically pried L.C. from her mother's arms, causing L.C. to fall and injure her face on the floor, then prevented J.P. from helping her daughter as she bled.  (FAC ¶ 61.)  Defendant's

---

[8] *See* House Comm. on Appropriations, Dep't of Homeland Sec. Appropriations Bill, 2006: Report Together with Additional Views (to accompany H.R. 2360), 109th Cong., 1st Session, 2005, H. Rep. 109-79 (expressing an expectation that the Government would release families, use alternatives to detention, or detain families together in appropriate spaces).

[9] The FAC alleges that Defendant had a practice, documented in internal memos, of falsely designating children as unaccompanied.  (FAC ¶¶ 35-46.)  As alleged, this practice involved separating children from their parents and then declaring them "unaccompanied" as a pretext to house them apart from their parents.  *Id.*  To the extent it is implied that Defendant deemed L.C. "unaccompanied," that designation was not in Defendant's discretion.  The TVPRA could therefore not have been a lawful basis for the separation.

10

employees shipped L.C. 800 miles away from her mother and watched her struggle to eat and drink and weep daily for her mother.  (*Id*. ¶¶ 64, 67.)  Not only does the conduct itself "shock the contemporary conscience[,]" *Ms. L.*, 310 F. Supp. 3d at 1144-46, equally shocking is Defendant's characterization of these acts as in L.C.'s "best interest."

Finally, the Government maintains that having "made the discretionary decision to refer J.P. for criminal prosecution and detain her in a secure detention facility," it was required under federal law and the *Flores* Agreement to place L.C. in ORR custody away from J.P.  (Mot. at 8-9, n.4.)  But again Defendant presupposes without authority that detaining J.P. in "secure detention facility" required separating her from her minor child.  Defendant's conclusion that separation naturally results from detention is flawed, especially since the Government "has denounced the prior practice of separating children from their families at the United States-Mexico border."  (Mot. at 1.)  Furthermore, the *Flores* court explained that the *Ms. L* injunction prohibiting family separations does not conflict with or require the Government to violate the *Flores* Agreement, which allows for the detention of families together, in family facilities, their release on parole or bond, and allows parents to waive their children's *Flores* rights to exercise their right to reunification under the injunction.  *See Flores v. Sessions*, No. CV-85-4544, 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018).

## II.     No Statute or Regulation Mandated Separating Plaintiffs and Defendant Did Not Act with Due Care

The due care exception bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  A two-part test determines whether the due care exception applies.  *Welch v. United States.*, 409 F.3d 646, 652 (4th Cir. 2005); *see, e.g., Ferguson v. United States*, No. 15-CV-1253 JM , 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016).  Defendant must show that (1) the "statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow;" and (2) the

11

official "exercised due care in following the dictates of th[e] statute or regulation." *Welch*, 409 F.3d at 652.

Defendant's argument that the due care exception shields it from liability resulting from its family separation policy has been uniformly rejected because "[a]ctions taken pursuant to executive policy are not shielded by the due care exception." *A.P.F.*, 492 F. Supp. 3d at 996; *see A.I.I.L.*, 2022 WL 992543, at *5 (same); *F.R.*, No. 21-CV-00339, ECF No. 77 at 8-9; *see also P.G.*, No. CV-21-04457, ECF No. 44 at 8 ("The fact that the Government is now attempting to evade liability for a policy that is still being unwound . . . is not legally defensible."); *Nunez Euceda*, 2021 WL 4895748, at *4 ("Defendant fails to cite any statute or regulation that required Plaintiff and his children to be separated upon their arrival to the United States."); *A.F.P.*, 2022 WL 2704570, at *14-15. Defendant's argument fails here for the same reasons, including that the Government does not identify any statute or regulation that mandated Plaintiffs' separation. "Because Plaintiff's detention was not the result of a statutorily prescribed course of action," the exception cannot apply. *Gonzalez v. United States*, No. CV-12-01912 , 2013 WL 942363, at *3-4 (C.D. Cal. Mar. 11, 2013). Defendant's motion also makes no argument that it acted with due care.

**A.** **No Statute or Regulation Mandated Plaintiffs' Separation**

The due care exception requires that government action be mandated, not merely authorized, by a statute or regulation. *Welch*, 409 F.3d at 652. Courts in this District apply the same standard.[10] *See A.P.F.*, 492 F. Supp. 3d at 995 (applying *Welch*'s two-part test).

---

[10] Defendant's assertion that its actions need only be "authorized" by a statute or regulation relies on a misreading of *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985). *Borquez* upheld a grant of summary judgment over the plaintiffs' challenge to the government's delegation of its responsibility to care and maintain property on a dam, reasoning that government "[l]iability for duties delegated pursuant to statute is forbidden." *Id*. at 1052. As explained in *A.P.F.*, the *Borquez* plaintiffs' direct challenge to the government's statutory authority to delegate the entirety of its care and maintenance responsibilities is a particular type of challenge that the exception is intended to prohibit. *A.P.F.*, 492 F. Supp. 3d at 995, n.2. By contrast, the families in *A.P.F.*, as here, were not challenging any statute

The Government points to the TVPRA, which addresses Defendant's obligation to "transfer the custody" of an unaccompanied migrant child to the care of ORR "not later than 72 hours after determining that such child is an [unaccompanied migrant child]." (Mot. at 17); 8 U.S.C. § 1232(b)(3).  However, the TVPRA, as stated above in Section I.B, does not direct Defendant to forcibly remove children from their parents' custody. Defendant has not established—nor can it do so at the pleading stage—that it applied the TVPRA in separating L.C. from her mother, or that L.C. was subject to the TVPRA.  Given that L.C. was accompanied, TVPRA could not have applied.  By the same token, the TVPRA's authority to transfer custody of an unaccompanied child could not have been the mandate allowing the Government to forcibly remove L.C. from her mother's custody.

No statute required Defendant to separate L.C. from J.P.  As recently stated in *A.P.F.*, "family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation."  492 F. Supp. 3d at 995-996.  Actions under executive orders and directives are not protected by the due care exception, which is relevant only when government employees are acting "in the execution of a statute or regulation." 28 U.S.C. § 2680(a).  The Government separated Plaintiffs under nothing more than a policy deliberately designed to inflict emotional distress on migrants with the goal of deterring future asylum seekers.  The due care exception does not apply where "a policy—not a statute or regulation"—mandated the conduct at issue. *Garcia-Feliciano v. United States*, No. 12-1959, 2014 WL 1653143, at *4 n.8 (D. P.R. Apr. 23, 2014) (citing *Welch*, 409 F.3d at 652).

**B.      The Separation of Children from Their Parents at the Hands of Government Agents Was Done Without Due Care**

Even if the Government met the first prong of the due care exception, it must still show that it acted with "due care."  *Welch*, 409 F.3d at 652.  Defendant does not even

at all, let alone a statute's grant of authority to delegate the Government's responsibility. *Id.*

13

reference the second prong of the due care exception, much less explain how the allegations of the FAC show it was met.  By failing to establish a required element of the due care exception, the Government waives its application.  *See Save the Peaks Coal. v. U.S. Forest Serv.*, No. CV 09-8163 , 2010 WL 3800896, at *2 (D. Ariz. Sept. 22, 2010).

"Due care" under § 2680(a) "implies at least some minimal concern for the rights of others."  *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (quoting *Hatahley v. United States*, 351 U.S. 173, 181 (1956)).  The Government did not act with even minimal concern when it separated J.P. and L.C.  To the contrary, Defendant's officers subjected Plaintiffs to inhumane treatment.  (*See* FAC ¶¶ 3-5, 54, 57.) Plaintiffs were detained in freezing cells with little space to sleep, insufficient food and water, and without regard to their sanitary or medical needs.  (*Id*. ¶ 54.)  During their physical separation, L.C. sustained a significant injury requiring repeated medical attention (*id.* ¶¶ 61, 64, 66), and J.P. was deprived of information about her daughter's location and safety while the two were kept out of contact (*id*. ¶¶ 8-9, 63, 76-78).  These acts demonstrate that the Government lacked any concern for the rights of J.P. and L.C.  *E.g.*, *A.F.P.*, 2022 WL 2704570, at *15; *A.P.F.*, 492 F. Supp. 3d at 995-96.

### III.   Plaintiffs' Tort Claims Satisfy the Broad Private Analog Inquiry

Subject-matter jurisdiction under the FTCA is established by showing that "a private individual under like circumstances would be liable under state law."  *United States v. Muniz*, 374 U.S. 150, 153 (1963); 28 U.S.C. § 1346(b).  Plaintiffs satisfy that requirement here by alleging claims for IIED, negligence, abuse of process, and loss of consortium, each of which would apply to private actors under state law.  The private analogue doctrine, which holds the Government liable "in the same manner and to the same extent as a private individual under like circumstances" (28 U.S.C. § 2674), is interpreted broadly.  *Indian Towing Co. v. United States*, 350 U.S. 61 (1955).  Because the Government "'could never be exactly like a private actor,' [courts need only] 'find the most reasonable analogy' to private, tortious conduct."  *A.P.F.*, 492 F. Supp. 3d at 994 (quoting *Dugard v. United States*,

835 F.3d 915, 919 (9th Cir. 2016)).  Accordingly, FTCA claims may proceed even as to immigration officers' uniquely governmental acts.  *See Xue Lu v. Powell*, 621 F.3d 944, 947-50 (9th Cir. 2010).

The Government contends it has "not waived its sovereign immunity for such decisions because only the Federal Government has the authority to enforce federal law and make determinations concerning the detention of noncitizens." (Mot. at 18-19.)  But it is well-settled that the Government can be liable even for activities over which it has exclusive authority.  The Government may be liable for the Coast Guard's failure to maintain a lighthouse, for example.  *See Indian Towing*, 350 U.S. at 69-70.  Or it can be liable for the confinement of inmates even though the confinement of inmates is a uniquely governmental function.  *Muniz*, 374 U.S. at 159-62, 165-66.  In short, "[e]ven if the conduct entails uniquely governmental functions, the court is to examine the liability of private persons in analogous situations." *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007).

J.P. and L.C.'s injuries arise from their separation at the hands of Government officials.  (*See, e.g.*, FAC ¶¶ 1, 4, 8, 11, 59-63, 64-68, 70, 72.)  Private individuals have been held liable in Arizona[11] for IIED, negligence, abuse of process, and loss of consortium under similar circumstances, and the Government has been held liable to suit on nearly identical facts in *C.M.*, 2020 WL 1698191, at *2, and *A.P.F.*, 492 F. Supp. 3d at 994-95.[12]

---

[11] Plaintiffs respond to the Government's arguments under Arizona law; however, Plaintiffs do not agree that only Arizona law applies since certain conduct by Defendant and injuries suffered by Plaintiffs occurred in other states.  For example, after being separated from her daughter, "federal agents moved J.P. to an ICE detention facility in Irvine, California." (FAC ¶ 16.)  Additionally, ORR "facilitated [L.C.'s] flight to Burbank, California, where" she was reunited with her mother.  (FAC ¶ 80.)

[12] *See also Pankratz v. Willis*, 155 Ariz. 8, 10, 22 (App. 1987) (upholding IIED verdict in favor of parent whose in-laws facilitated and concealed the disappearance of parent's child); *Martinez v. United States*, No. CV-13-00955-TUC-CKJ , 2018 WL 3359562, at *11 (D. Ariz. July 10, 2018) (denying Government's summary judgment motion on IIED claim against CBP agents where those agents separated a family, threatened incarceration, and offered to release the plaintiff's children if he confessed); *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10, 2020) (recognizing

1   Plaintiffs' IIED claim mirrors Arizona law based on "ample factual allegations suggesting

2   that the government's separation of families was motivated by malice."  *C.M.*, 2020 WL

3   1698191, at *2; (*see, e.g.*, FAC ¶¶ 34, 41-42, 44, 48.)

4            Arizona law also recognizes that private persons owe a duty of care when acting in

5   a caretaker capacity analogous to the Government's relationship to Plaintiffs.  A caregiver

6   owes a duty of reasonable care to their patients, for example, *see Sanders v. Alger*, 242

7   Ariz. 246, 249 (2017), parents owe a duty of care to their children, *see Broadbent by*

8   *Broadbent v. Broadbent*, 184 Ariz. 74, 81 (1995), and schools have a duty not to subject

9   students to a risk of harm, *see Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112 (App.

10  1997).  Given these Arizona law-based duties, Defendant's agents also had a duty not to

11  negligently harm Plaintiffs while in custody, and their failure to do so supports a negligence

12  claim under the FTCA.  *See, e.g.*, *Estate of Smith*, 2020 WL 1158552, at *2.  Arizona law

13  permits damages for the loss of a child's consortium when a caretaker's actions caused

14  "significant interference with the normal relationship between parent and child."  *Bickler*

15  *v. Senior Lifestyle Corp.*, No. CV-09-00726-PHX-DGC, 2010 WL 2292985, at *6 (D. Ariz.

16  June 8, 2010).

17           Defendant relies on a Second Circuit decision, *Akutowicz v. United States*, 859 F.2d

18  1122 (2d Cir. 1988), for the premise that decisions to detain individuals are "quasi-

19  adjudicative Actions" with no private analogue.  (Mot. at 20.)  *Akutowicz* involved the

20  revocation of the plaintiff's citizenship, explaining that such "quasi-legislative or quasi-

21  adjudicative action by an agency of the federal government is action of the type that private

22  persons could not engage in and hence could not be liable for under local law."  859 F.2d

23  at 1125 (quoting *C.P. Chemical Co. v. United States*, 810 F.2d 34, 38 (2d Cir. 1987)).

24  Detention decisions are distinguishable from a revocation of citizenship.  The Second

25

26

_____

27  viability of negligence claim brought under FTCA where plaintiffs alleged federal
employees' placement of a prisoner in a certain cell was negligent).

28

16

Circuit in *Liranzo* clarified this distinction and rejected an extension of *Akutowicz* to an immigration-related false arrest claim:

> But in *Akutowicz*, there was no detention.  The only action complained of was the removal of plaintiff's citizenship. Citizenship is a legal status, which only the federal government is capable of altering.  A private individual cannot . . . cause injury to another's citizenship.  But a private person is of course capable of falsely arresting another.

*Liranzo v. United States*, 690 F.3d 78, 96 (2d Cir. 2012).  As in *Liranzo*, Plaintiffs are not challenging a revocation of their citizenship but rather the Government's violation of duties that would also apply to private persons under Arizona law had they mistreated and separated family members in their care.

The out-of-Circuit authorities Defendant cites address a private analogue of "wrongful confinement," which is not at issue here.  (Mot. at 20.)  *McGowan v. United States* involved a false imprisonment claim based on solitary confinement that the plaintiff analogized to the New York tort of wrongful confinement.  825 F.3d 118, 126 (2d Cir. 2016).  The court found that the Government's ability to impose solitary confinement could not be analogized to a private person committing false imprisonment.  *Id*.  *Buzzanca v. D.C.* and *Portillo v. United States*, which considered alleged miscalculations of the plaintiffs' time served as an incarcerated inmate, are also irrelevant to the allegations in the FAC.  523 F. Supp. 3d 64 (D. D.C. 2021); No. 17-CV-00394, 2018 WL 523363 (D. Nev. Jan. 22, 2018).[13]

Plaintiffs do not assert false imprisonment resulting from wrongful detention, but rather that their separation satisfied the elements of IIED, negligence, abuse of process,

---

[13] The other cases on which the Government relies are likewise inapposite.  *Elgamal v. United States* held there was no private analogue in Arizona for a negligence challenge to the adjudication of an application for adjustment of status to lawful permanent residence, a factual pattern unrelated to Plaintiffs' claims of forcible and prolonged family separation. *See* No. CV-13-00867-PHX-DLR, 2015 WL 13648070, at *3 (D. Ariz. July 8, 2015).  And *Bhuiyan v. United States* does not involve Arizona law at all.  No. 14-cv-00013, 2017 WL 2837023, at *4 (D. N. Mar. I. June 30, 2017) (applying the law of Vermont and the Northern Mariana Islands), *cert. denied*, 140 S. Ct. 1147 (2020).

17

and loss of consortium claims.  Courts within this Circuit permit tort claims that, while arising in the course of detention, do not challenge the fact of detention itself.  *See Martinez*, 2018 WL 3359562, at *11 (denying Government's summary judgment motion on IIED claim against CBP agents where those agents separated a family, threatened incarceration, and offered to release the plaintiff's children if he confessed); *see also Estate of Smith*, 2020 WL 1158552, at *1 (recognizing viability of negligence claim brought under FTCA where plaintiffs alleged federal employees' placement of a prisoner in a certain cell was negligent).  The simple fact that the Plaintiffs were in detention when Defendant harmed them does not obviate any private-person analogue based on those acts.  Private persons can be liable for intentional or negligent tortious conduct while someone is in their care.

**IV.    Plaintiffs' Tort Claims Are Not Barred Merely Because Defendant's Tortious Conduct Also Happened to Infringe Plaintiffs' Constitutional Rights**

Plaintiffs' IIED, negligence, abuse of process, and loss of consortium causes of action are tort claims, not constitutional ones, such as a *Bivens* or other civil rights claim for violation of due process.  The FAC alleges that the Government violated its tort duties, causing Plaintiffs harm.  The fact that Defendant's tortious conduct also violated the Constitution does not convert Plaintiffs' claims into "constitutional torts."  As *C.M.* and *A.P.F.* held, Defendant cannot "re-categorize" Plaintiffs' allegations about poor conditions as standalone claims and then call them impermissible constitutional torts.  *See C.M.*, 2020 WL 1698191 at *4 n.5; *A.P.F.*, 492 F. Supp. 3d at 996-97.

The Government's reliance on *FDIC v. Meyer*, 510 U.S. 471 (1994), is unavailing.  *Meyer* held that the plaintiff's *Bivens* claim was a "constitutional tort" not cognizable under the FTCA.  *Id*. at 477-78.  The Court reasoned that a *Bivens* claim, in seeking to redress a constitutional violation, lacks a state-law analogue because it arises from the U.S. Constitution.  *Id.* at 478.  Plaintiffs assert no *Bivens* or other constitutional claim, relying instead on tort violations with analogues under state law.

18

Despite the absence of constitutional claims in the FAC, the Government relies on case law to style Plaintiffs' allegations of inhumane treatment during detention as a "constitutional attack" on the conditions of their confinement.   (Mot. at 21.)   The Government's cases are distinguishable.   In *Aguilar*, the scope of the plaintiff's IIED claim was limited to constitutional allegations regarding "general conditions, practices, rules, or restrictions of pretrial confinement." *Aguilar v. United States*, No. 1:16-CV-048; 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017).  Relying on Fifth Circuit precedent, *Aguilar* found that the "basis of" the plaintiff's claims were complaints about pretrial confinement conditions and that a *Bivens* action was thus the appropriate form of the claim. *Id.* (citing *Cook v. Tex. Dep't of Crim. Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994)).

In contrast to *Aguilar*, where the claims were based entirely on poor conditions, Plaintiffs' allegations are based on Defendant's unlawful separation of families, including the tortious acts of Government agents during their detention.  Plaintiffs have not asserted any claim based solely on the poor condition of the detention centers such that it would constitute a veiled constitutional attack. *C.f. Thompson v. United States*, No. 1:14-CV-0894, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015) (prisoner's sole claim was the denial of his right to petition the courts); *Sutter v. United States*, 17-CV-07245, 2019 WL 1841905, at *4 (C.D. Cal. Mar. 12, 2019) (in addition to his *Bivens* claim, the federal prisoner also asserted specific constitutional violations refashioned as "negligent failure to protect" claims).  Tort claims routinely proceed under the FTCA despite simultaneous constitutional violations. *See e.g.*, *Nurse*, 226 F.3d at 1002 (FTCA claim based on the Government's promulgation of discriminatory, potentially unconstitutional policies, can proceed past the motion to dismiss stage); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) (plaintiff's tort claims involving 1st and 4th Amendment violations may proceed); *Prisco v. Talty*, 993 F.2d 21, 26 n.14 (3d. Cir. 1993) (similar); *Limone v. United States*, 579 F.3d 79, 102 n.13 (1st Cir. 2009) ("[W]e do not view the FBI's constitutional

transgressions as corresponding to the plaintiffs' causes of action—after all, the plaintiffs' claims are not *Bivens* claims . . . .").

## V.    Plaintiffs Allege Tortious Actions of Individual Government Employees and Do Not Rely Only on Institutional Acts of the Government as a Whole

The FTCA provides a waiver of the Government's sovereign immunity for tort claims arising out of the conduct of Government employees acting within the scope of their employment.  28 U.S.C. § 1346(b)(1); *United States v. Orleans*, 425 U.S. 807, 813–14 (1976) *See, e.g.*, *F.R.*, No. 21-CV-00339, ECF No. 77 at 7 (denying dismissal of claims "based on tortious misconduct by individual employees working for [Government] agencies").  The FTCA defines "government employee" to include "persons acting on behalf of a federal agency in an official capacity."  28 U.S.C. § 2671.  The Government nevertheless argues that "a plaintiff cannot assert 'systemic' claims under the FTCA, but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment."  (Mot. at 22.)

It is unclear what the Government means when it refers to "systemic" claims or where the supposed prohibition against such claims springs from.  The Government cites *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005), but that case merely holds that under the FTCA a corporation cannot be an "employee" of the Government, which is not a question at issue here.  Defendant also cites *Lee v. United States*, No. CV 19-08051-PCT-DLR , 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), which noted that *Adams* is "not directly on point" to the issues in that case, dismissing a claim where the plaintiff's allegations were "too vague and conclusory" because, among other things, she had not "set forth the alleged acts or omissions of specific federal employees."  *Id.* at *5.  Neither case discusses "systemic" claims.

Contrary to Defendant's assertions, Plaintiffs' FAC sets forth acts attributable to Government agents and officials, both at the policy level and in executing that policy, causing actionable harm to Plaintiffs.  Plaintiffs allege numerous decisions by Defendant's

agents and officials regarding implementation of the family separation policy: DHS officials considered a policy of separating parents with children arriving at the U.S.-Mexico border as a means of deterring asylum seekers (FAC ¶ 34); Government officials at the highest levels, including the Assistant Secretary of HHS, knew of the trauma to children and parents that the policy would cause and embraced that result, believing that publicity about the harms would deter asylum-seeking families from immigrating to the United States (*id*. ¶¶ 41-42, 48); and CBP agents targeted parents who crossed the border with children. (*Id*. ¶ 44.)  Individual agents forcibly separated parents and children, including J.P. and L.C., despite the trauma it caused and without providing information as to the possibility of reunification. (*See, e.g.*, *id*. ¶¶ 58-62, 68, 75.)  Contrary to Defendant's contentions, these allegations clearly and sufficiently point out the federal employees involved in violating the law within their respective scopes of employment. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (finding dismissal of complaint improper "where the identity of the allege defendant is not known prior to the filing of a complaint unless it is clear that discovery would not uncover the identities").

## VI.     Arizona Law Does Not Shield Defendant's Independently Tortious Acts

The Government mischaracterizes Plaintiffs' alleged injuries as the result of their own purported criminal conduct.  The torts alleged are not the result of Plaintiffs' alleged criminal conduct but of federal government employees' unlawful separation of Plaintiffs from one another, to leverage emotional distress as an immigration deterrent. (*See* FAC ¶¶ 4, 8-10.)

The Government relies on *Muscat v. Creative Innervisions LLC*, a case about a convicted sex offender who sued a group home for leaving him unsupervised, which in turn allegedly led him to sexually assault a child, resulting in plaintiff's incarceration.  418 P.3d 967, 969 (App. 2014).  Plaintiffs have never been criminally charged, so the comparison to *Muscat* stops before it begins.  *Muscat* found that the plaintiff's alleged injuries were not "distinct from the consequences of his prison sentence" and that "no

properly-convicted criminal has a legally protected interest in being free from the inherent consequences of the resulting sentence." *Id.* at 971.  The Government's forcible separation of Plaintiffs resulting in their inability to communicate with each other, and their causing physical injury to L.C., is not the "inherent consequence" of Plaintiffs' actions when it was the Government's unconstitutional and illegal act that caused such injuries.

Supervision and detention are in any event not the same.  In *Muscat*, the plaintiff was placed into a group home after being convicted of child abuse, where representatives provided him with a "one-on-one supervision" plan that was to be in effect "at all times." *Id.* at 969.  Plaintiffs here are not criminals, nor were they detained to keep society safe from their actions, as with convicted sex offenders.  Nor are Plaintiffs seeking redress from harms resulting from a criminal offense they perpetrated while in Defendant's detention.

## VII.  Plaintiffs Allege the Elements of a Negligence Claim

*Twombly* and *Iqbal* require a complaint to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' exceptionally detailed FAC meets that modest standard.

To state a negligence claim under Arizona law, a plaintiff must allege sufficient facts to support the following four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007).  The Government argues that Plaintiffs do not allege an Arizona law imposing on it a duty of ordinary care.  (Mot. at 24-25.)

As explained above in Section III, there is a private analogue for negligence under state law, including the existence of a duty of ordinary care.  *See, e.g.*, *Sanders*, 242 Ariz. at 249.  Plaintiffs have alleged in more than sufficient detail that: Defendant owed them a duty of care, that it breached this duty, and that as a direct and proximate cause of this

breach, Plaintiffs suffered injury.   (FAC ¶¶ 25-28, 34-48, 49-89, 107-110.)   These allegations adequately state a claim for negligence.  *See DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 11 (1985) (Arizona law imposes duty where a person "takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection" (quoting Restatement (Second) of Torts § 314A (1965)); *see also A.P.F.*, 492 F. Supp. 3d at 999 (finding a claim of negligence to be sufficiently plead in a similar case involving family separation).   "Federal immigration officials, too, are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care."  *C.M.*, 2020 WL 1698191, at *2.

Defendant also alleges that Plaintiffs fail to claim negligence on the part of any particular federal employee.  (Mot. at 25.)  However, the FAC identifies multiple, specific federal employees including: (1) the Attorney General (FAC ¶ 39), (2) former President Trump (FAC ¶¶ 42, 46, 48), (3) the officials that separated J.P. and L.C. (FAC ¶¶ 59-62), and (4) the ORR officials that failed to connect L.C. with J.P. (FAC ¶ 68).  In any event, "[t]o the extent the [G]overnment is arguing that plaintiffs must specifically identify every employee, official, and contractor involved in each of the alleged acts, such is not required at this early stage of litigation when discovery has yet to be conducted."  *A.F.P.*, 2022 WL 2704570, at *18; *see also Wakefield*, 177 F.3d at 1163.  By relying on a sufficiency of pleading standard for one claim as the basis for moving to dismiss the claim, the Government attempts to "parse the Complaint" in a way that other courts in this District have rejected.  *C.M.*, 2020 WL 1698191, at *4.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

RESPECTFULLY SUBMITTED this 14th day of March, 2023.

1

                                        */s/ Daniel B. Pasternak*

Daniel B. Pasternak

2

SQUIRE PATTON BOGGS (US) LLP

2325 East Camelback Road, Suite 700

3

Phoenix, AZ 85016

Telephone:    602.528.4187

4

Facsimile:    602.253.8129

daniel.pasternak@squirepb.com

5

6

Manuel F. Cachán (*pro hac vice*)

PROSKAUER ROSE LLP

7

2029 Century Park East, Suite 2400

Los Angeles, CA 90067-3010

8

Telephone:    310.557.2900

Facsimile:    310.557.2193

9

mcachan@proskauer.com

10

Hena M. Vora (*pro hac vice*)

Timothy E. Burroughs (*pro hac vice*)

11

PROSKAUER ROSE LLP

Eleven Times Square

12

New York, NY 10036

Telephone:    212.969.3000

13

Facsimile:    212.969.2900

hvora@proskauer.com

14

tburroughs@proskauer.com

15

Joel Frost-Tift (*pro hac vice*)

16

PUBLIC COUNSEL

610 South Ardmore Avenue

17

Los Angeles, CA 90005

Telephone:    213.385.2977

18

Facsimile:    212.385.9089

jfrost-tift@publiccounsel.org

19

20

*Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

24

1

**<u>Certificate of Service</u>**

2

      I certify that on this 14th day of March, 2023, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF system for filing and transmittal of a

4

Notice of Electronic Filing to all parties and counsel of record by operation of the Court's

5

electronic filing system.  The Parties may access this filing through the Court system.

6

7

                          */s/ Tammy Gougeon*

8

                          Tammy Gougeon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1