**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J.P., et al., | No. CV-22-00683-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Plaintiffs J.P. and L.C. (collectively "Plaintiffs") are a mother and minor daughter who illegally entered the United States seeking asylum.[1] Pursuant to the Trump Administration's immigration enforcement policies, Plaintiffs were separated from one another by Customs and Border Patrol ("CBP") while in federal custody. Plaintiffs have brought claims against the United States under the Federal Tort Claims Act ("FTCA") for injuries sustained from their separation. Pending before the Court is the United States' Motion to Dismiss Plaintiffs' First Amended Complaint ("Complaint" or "FAC") (Doc. 38).[2] The United States maintains that the government has not waived sovereign immunity under the FTCA, and that Plaintiffs' claims must be dismissed. For the reasons discussed below, the United States' Motion to Dismiss (Doc. 38) is granted in part and denied in part.

---

[1] The Court previously granted Plaintiffs' request to proceed in this case under pseudonyms. (Doc. 18.)
[2] The Court granted Plaintiffs leave to file a First Amended Complaint (Doc. 34), and consequently denied the United States' first Motion to Dismiss (Doc. 15) as moot.

I.   **BACKGROUND**[3]

A.   **Immigration Law and Policy**

In January of 2017, former-President Donald Trump signed Executive Order No. 13767. This directive declared that the "executive branch [shall] . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" Executive Order 13767 § 2(b), 82 Fed. Reg. 8793 (Jan. 30, 2017). To effectuate this Order, the Attorney General of the United States issued a memorandum directing federal prosecutors along the United States' border to adopt a zero-tolerance approach to enforcement, and to prosecute all "Department of Homeland Security referrals of [federal immigration] violations." Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018) DOJ 18-417, 2018 WL 1666622. Following the Attorney General's guidance, the United States Department of Homeland Security ("DHS") began prioritizing the detention and prosecution of individuals who illegally entered the United States in violation of federal and state law. (Doc. 35, ¶ 45.) The practical effect of these newly identified enforcement priorities was to separate thousands of children from their parents or guardians after they arrived at or crossed over the United States border. (*Id.*, ¶ 7.) These children were placed in non-secure, licensed facilities under the care of the United States Department of Health and Human Services and the Office of Refugee Resettlement ("ORR").[4] (*Id.*, ¶¶ 16, 21.) The parents remained in secure detention facilities under the care and supervision of DHS, United States Immigration and Customs Enforcement ("ICE"), and CBP, pending removal proceedings. (*Id.*, ¶¶ 16, 20.) On June 20, 2018, President Trump issued Executive Order No. 13481, "purporting to end the Family Separation Policy." (*Id.*, ¶ 46.)

The Trump Administration's immigration enforcement policy at issue here is referred to as the "Family Separation Policy" in Plaintiffs' Complaint and as the

---

[3] For the purposes of this Order, the Court accepts all factual allegations in the FAC (Doc. 35) as true but need not accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] The *Flores* consent decree prohibited the government from detaining unaccompanied minors in secure detention facilities. *Flores v. Lynch*, 828 F.3d 898, 902–03 (9th Cir. 2016) ("[DHS] must transfer the minor to a non-secure, licensed facility[.]").

"Zero-Tolerance Policy" in the United States' filings, so the Court will refer to the challenged actions as "the Policy" for clarity and ease of reference.

### B.      Plaintiffs' Detention

In early May, 2018, Plaintiffs fled Guatemala to the United States to escape violence in their home country. (*Id.*, ¶ 3.) They traveled for nine days to the United States-Mexico Border. (*Id.*, ¶ 51.) On May 16, 2018, Plaintiffs entered the United States illegally near the San Luis, Arizona port of entry. (*Id.*, ¶ 52.) Shortly thereafter, CBP apprehended Plaintiffs. (*Id.*, ¶ 53.) Initially, Plaintiffs were detained for three days at a border patrol station in Yuma, Arizona where they were subjected to cold, crowded conditions and were not provided showers, beds, or private toilets. (*Id.*, ¶ 54.) CBP then determined that Plaintiffs needed to be detained at separate facilities. (*Id.*, ¶ 59.) When CBP arrived, L.C. became distraught, fainted, and fell to the floor. (*Id.*, ¶ 61.) J.P. saw her daughter's face bleeding, and she was overwhelmed because she could not help. (*Id.*) L.C. was taken to an emergency medical facility for treatment. (*Id.*, ¶ 64.) L.C. was then taken to Southwest Key Casa Phoenix, a children's immigration shelter in Phoenix, Arizona. (*Id.*, ¶ 65.) J.P. remained in the custody of CBP and was transferred to the Musick Detention Facility in Irvine, California. (*Id.*, ¶ 71.)

Plaintiffs were separated from one another for 57 days. (*Id.*, ¶ 81.) During this time, L.C. cried daily and would constantly ask officers to allow her to speak with her mother. (*Id.*, ¶ 67.) Similarly, J.P. was distraught and was unable to ask officers to tell her where her daughter was because she was unable to understand, speak, or write in English or Spanish and was not provided an interpreter. (*Id.*, ¶¶ 55, 70.) CBP at first denied Plaintiffs the means to communicate with one another, but, after J.P. obtained legal counsel, the two were allowed to maintain minimal contact through telephone calls. (*Id.*, ¶ 77.) Eventually, on July 13, 2018, an immigration judge ordered that J.P. be released on bond. (*Id.*, ¶ 80.) Three days later, J.P. and L.C. were reunited. (*Id.*, ¶ 81.) Plaintiffs now live together in Florida, where they are pursuing asylum. (*Id.*, ¶ 82.)

Due to their separation, Plaintiffs allege that they have suffered severe emotional

distress and mental trauma. (*Id.*, ¶¶ 84, 85.) Plaintiffs claim that the Policy violated their constitutional rights and have brought four claims against the United States under the FTCA for: (1) intentional infliction of emotional distress ("IIED"); (2) negligence; (3) abuse of process; and (4) loss of consortium. (*Id.* at 24-25.) The United States' Motion to Dismiss is fully briefed (Docs. 38, 41, 45) and the Court held oral argument on the same.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under 12(b)(1)

Federal courts are courts of limited jurisdiction: "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guard. Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing 28 U.S.C. § 1331).

A party may move under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss claims in which the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a defendant argues that the claims in the complaint, even if true, are insufficient to establish subject-matter jurisdiction, the challenge is a facial one. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), courts must accept all material allegations in the complaint as true and construe the complaint in favor of the plaintiff. *White*, 227 F.3d at 1242; *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). When evaluating a Rule 12(b)(1) motion, the plaintiff bears "the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citation omitted).

### B. Federal Tort Claims Act

As a sovereign, the United States can "be sued only to the extent that it has waived its immunity[.]" *United States v. Orleans*, 425 U.S. 807, 814 (1976). The FTCA represents

Congress' waiver of sovereign immunity "for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) (citing 28 U.S.C. § 1346(b)(1)). The FTCA, however, has only waived the United States' sovereign immunity for "certain categories of claims." *Id.* at 218. In general, the United States only waives sovereign immunity if an FTCA claim is: (1) against the United States; (2) for money damages; (3) for injury or loss of property, personal injury, or death; (4) that was "caused by the negligent or wrongful act or omission of any employee of the Government;" (5) while such employee is acting within the scope of their employment; and (6) "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As a result, claims alleging violations of constitutional rights, or those based on acts or omissions of institutions, rather than individuals, are not cognizable under the FTCA. 28 U.S.C. § 2679(b)(2)(A); *see Adams v. United States*, 420 F.3d 1049, 1054 (9th Cir. 2005). To state a claim and invoke the Court's subject-matter jurisdiction under the FTCA, Plaintiffs must plausibly allege all six elements of Section 1346(b).

Even if plausibly pleaded, "liability of the United States under the FTCA is subject to the various exceptions contained in [28 U.S.C. § 2680]." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). As to the FTCA's exceptions, the "plaintiff has the burden of showing there are genuine issues of material fact as to whether the exception should apply, but the government bears the ultimate burden of establishing that the exception applies." *Green v. United States*, 630 F.3d 1245, 1248–49 (9th Cir. 2011). Furthermore, motions to dismiss based on an exception to the FTCA's waiver of sovereign immunity are treated as motions to dismiss for lack of subject-matter jurisdiction and reviewed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction.").

## III.   DISCUSSION

The United States argues that Congress has not waived sovereign immunity for

Plaintiffs' claims under the FTCA because: (1) there is no private person analog for Plaintiffs' claims; (2) the FTCA bars recovery for institutional torts; (3) the FTCA bars recovery for constitutional torts; (4) the challenged United States actions fall under the FTCA's discretionary function exception;  (5) the challenged United States actions fall under the FTCA's due care exception; and (6) Plaintiffs' claims are barred under Arizona law as they arise from Plaintiffs' lawful detention. (Doc. 38 at 2.) Each one of these arguments, if established by the United States, is independently dispositive. Alternatively, the United States argues that Plaintiffs' negligence claim should be dismissed for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6). (*Id.*) The Court will address each argument in turn.

### A.    The FTCA's Private Person Analog Requirement

Under  28 U.S.C. § 1346(b)(1),  Plaintiffs  may  only  recover on claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* As such, recovery in tort is only allowed "in the same manner and to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674.

The United States argues that Plaintiffs' claims do not satisfy the private person analog requirement because only the federal government can enforce federal laws and make immigration decisions. (Doc. 38 at 18-20.) The United States' attempt to distinguish a line of cases from this District rejecting the same argument for claims of negligence, IIED and loss of consortium is unpersuasive. "Like in those cases, to the extent Plaintiffs' claims are predicated on the actions of unnamed officials executing the Policy, who allegedly (1) separated  family  members,  (2)  negligently  made  daily  housing  and  safety determinations, and (3) interfered with Plaintiffs' parent-child relationship, there are sufficient private analogues." *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *3 (D. Ariz. Jul. 22, 2022) (collecting cases finding the FTCA private analog requirement satisfied for IIED, negligence, and loss of consortium claims). Although the United States urges the Court to consider "the specific conduct alleged here"

1    (Doc. 45 at 15), the private person analog requirement must be interpreted broadly because

2    the United States "could never be exactly like a private actor." *A.P.F. v. United States*, 492

3    F. Supp. 3d 989, 994 (D. Ariz. 2020) (quoting *Dugard v. United States*, 835 F.3d 915, 919

4    (9th Cir. 2016)). Courts need only "'find the most reasonable analogy' to private, tortious

5    conduct." *Id.* (quoting *Dugard*, 835 F.3d at 919).

6           Thus, the Court finds that there are sufficient analogs for Plaintiffs' claims for IIED,

7    negligence, and loss of consortium under the FTCA's private person analog requirement.

8    *E.g., Martinez v. United States*, No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562,

9    at *10–12 (D. Ariz. July 10, 2018) (recognizing viability of IIED claim against federal

10   agents); *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at

11   *1 (D. Ariz. Mar. 10, 2020) (recognizing viability of negligence claim based on federal

12   inmate housing decisions); *A.P.F.*, 492 F. Supp. 3d at 995 (recognizing viability of loss of

13   consortium claim under FTCA for interference with a parent-child relationship). Regarding

14   Plaintiffs' abuse of process claim, the Court need not reach this question because that claim

15   is barred as an institutional tort, for the reasons discussed below.

16          **B.      The FTCA's Prohibition on Institutional Torts**

17          The United States argues that Plaintiffs' claims are barred because the FTCA does

18   not allow recovery for institutional torts. (Doc. 41 at 22.) Under Section 1346(b)(1), the

19   court only has jurisdiction over tort claims alleging injury from the "negligent or wrongful

20   act or omission of any employee of the Government while acting within the scope of his

21   office or employment[.]" *Id.* The Ninth Circuit has interpreted the meaning of

22   Section 1346(b)(1), holding that the "general construction of the FTCA's definitions

23   section . . . indicates that 'employee' is meant to be limited to individuals." *Adams*, 420

24   F.3d at 1053. Therefore, the FTCA does not apply to "generalized theories of negligence

25   asserted against the staff and employees of federal institutions as a whole." *Lee v. United

26   States*, No. CV-19-08051-PCT-DLR-DMF, 2020 WL 6573258, at *6 (D. Ariz. Sept. 18,

27   2020) (citation omitted).

28          Plaintiffs' Complaint contains allegations that the "U.S. Government," "U.S.

Government officials," and "high-ranking federal officials" violated Plaintiffs' rights and sought to cause emotional harm to immigrant families by designing and implementing the Policy. (Doc. 35, ¶¶ 29, 30, 53-75.) As an example, Plaintiffs' abuse of process claim is predicated on the following allegations:

> [T]he U.S. Government used its immigration detention authority which is incident to the judicial process of removal proceedings for the improper ulterior motive of separating families such as [P]laintiffs to generate publicity, and for the improper ulterior motive of deterring Plaintiffs from asserting their rights under U.S. and international law to seek asylum in the United States.

(Doc. 35, ¶ 112.) Nowhere in Plaintiffs' FAC, however, do they make a plausible connection between any applicable employee conduct and the United States' alleged ulterior motive to deter lawful immigration. For example, all of Plaintiffs' references to public comments by high-ranking government officials merely discuss expected media coverage and a general deterrent effect on *illegal* immigration. (*See id.*, ¶¶ 41-42.) None of these are evidence that any particular government employee sought to deter those lawfully seeking asylum. Plaintiffs note that the United States did use the Policy to wrongfully separate families that lawfully presented themselves at a port of entry, but Plaintiffs concede that they themselves were apprehended and separated after illegally crossing into the United States. (*See* Doc. 35, ¶ 53.) None of the cited statements by public officials are evidence that the Policy, or its application to Plaintiffs, was intended to deter those lawfully present in the United States. Moreover, Plaintiffs have not alleged that any of the specific CBP officers who detained them and instituted removal proceedings against J.P. did so for an improper purpose that would support an abuse of process claim.[5]

At bottom, Plaintiffs' abuse of process allegations are too general to survive FTCA's bar on institutional torts. *See* 28 U.S.C. § 1346(b)(1); *see also B.A.D.J. v. United States*,

---

[5] "[T]o establish a claim for abuse of process there must be a showing that the defendant has (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and, (3) harm has been caused to the plaintiff by such misuse of process." *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982).

No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022) ("To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims.") Moreover, to the extent that any of Plaintiffs' other claims are also asserted as to actions of the "U.S. Government," "U.S. Government officials," and unidentified "high-ranking federal officials," those claims are barred as institutional torts and must be dismissed.

As to allegations against individual federal employees, Plaintiffs maintain that they have sufficiently identified specific federal employees who detained and separated them pursuant to the Policy. (Doc. 35 at 21.) The Court agrees. Although the United States argues that Plaintiffs only raise systemic challenges to their detention, Plaintiffs allege tortious acts and omissions of individual federal employees over which this Court has subject-matter jurisdiction. As an example, Plaintiffs allege that CBP Officers placed them in a cold, windowless, crowded cell where they could not lie down or use the restroom. (Doc. 35, ¶ 54.) Plaintiffs further allege that L.C. was interviewed by a CBP officer as a minor without her mother's consent and was forcibly separated from her mother in such a manner that caused her to faint and fall face first onto the concrete. (*Id.*, ¶¶ 56-61.) Although Plaintiffs do not refer to the CBP officers by name, the United States' pre-discovery complaints about Plaintiffs' inability to name the specific actors is premature. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007). For this reason, the Court finds that Plaintiffs' claims for negligence, IIED, and loss of consortium detailing acts and omissions of the CBP officers that detained and separated them are not barred by the FTCA as institutional torts. 28 U.S.C. § 1346(b)(1).

### C.     The FTCA's Discretionary Function Exception

The FTCA's discretionary function exception prohibits "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether the discretionary function exception applies, the Supreme Court has instructed courts to look

at whether the government's conduct (1) "involved an element of judgment or choice" and (2) is "based on considerations of public policy." *Gaubert*, 499 U.S. at 322 (cleaned up). To survive a motion to dismiss, Plaintiffs "must advance a claim that is facially outside the discretionary function exception." *Prescott v. United States*, 973 F.2d 696, 702 & n.4 (9th Cir. 1992). The burden then falls to the United States to prove that "the government actor retained an element of judgment or choice with respect to carrying out the challenged action." *Green*, 630 F.3d at 1248. If the United States establishes that the exception applies, plaintiff must then show a "genuine issue of material fact as to whether the exception should apply." *Id.* at 1248–49.

### 1. *Gaubert* Factors

The Court first considers whether the United States has established that the government's conduct in separating Plaintiffs' involved elements of judgment or choice. *Gaubert*, 499 U.S. at 322. As to Plaintiffs' detention for illegally entering the United States, "[t]he decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy[.]" *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012). As to Plaintiffs' detention at separate facilities, "Congress has placed the responsibility of determining where aliens are detained within the discretion of the Attorney General." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986), *amended*, 807 F.2d 769 (9th Cir. 1986). Thus, the Court finds that the United States' decision to detain Plaintiffs for illegally entering the country, and the United States' decision to detain Plaintiffs at separate facilities, were acts of prosecutorial discretion subject to deference from the Court, absent additional circumstances. *B.A.D.J.*, 2022 WL 11631016, at *3. Accordingly, the United States has satisfied the first prong of the *Gaubert* test.

Second, the Court must determine "whether the discretion left to the government is the kind of discretion protected by public policy, which is understood to include decisions grounded in social, economic, or political policy."[6] *Myers v. United States*, 652 F.3d 1021,

---

[6] Plaintiffs have failed to address this prong of the *Gaubert* test in their brief. Therefore, for the purposes of this Order, Plaintiffs have waived this issue. *Hartranft v. Encore Cap.*

1028 (9th Cir. 2011) (quotations omitted). This inquiry is meant to "prevent judicial second-guessing of legislative and administrative decisions grounded in . . . political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323 (cleaned up). "When a statute or regulation allows a federal agent to act with discretion, there is a 'strong presumption' that the authorized act is based on an underlying policy decision." *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) (citing *Gaubert*, 499 U.S. at 324).

Here, the Policy represented the Trump Administration's decision to detain and prosecute "individuals apprehended on suspicion of violating . . . Federal immigration law." Executive Order 13767 § 2(b), 82 Fed. Reg. 8793 (Jan. 30, 2017). Such a policy represents the type of conduct that is quintessentially grounded in social, economic, and political policy. *Arizona v. United States*, 567 U.S. 387, 394 (2012) ("The federal power to determine immigration policy is well settled. Immigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws."). For this reason, the Court finds that Plaintiffs' detention and separation was firmly based upon public policy considerations; namely, the enforcement of immigration laws. The United States has thus established the second prong of the *Gaubert* test.

## 2. Plaintiffs' Arguments

Because the United States has satisfied the *Gaubert* factors, the Court must determine whether Plaintiffs have identified "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow," and sufficiently alleged that the government employees' conduct violated it to overcome the exception. *Gaubert*, 499 U.S. at 322, 325; *see Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (requiring that a complaint allege a "specific and mandatory" statute, regulation, or policy to evade a motion to dismiss on the discretionary function exception). Plaintiffs assert that the United States' separation of Plaintiffs violated the CBP National Standards on

*Grp., Inc.*, 543 F.Supp.3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").

Transport, Escort, Detention, and Search ("TEDS"). (*See* Doc. 35, ¶¶ 94, 95) Assuming, without deciding, that the TEDS meet the definition of a "federal statute, regulation or policy" under *Gaubert*, Plaintiffs have not pointed the Court to any "specific and mandatory" language requiring that they remain together during detention. (*See* Doc. 35, ¶ 94 ("CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation.") (quoting TEDS at 4)); (*id.*, ¶ 95 ("CBP agents had a duty to 'consider the best interest of the juvenile at all decision points.'") (quoting TEDS at 4)).[7]

Additionally, the Ninth Circuit has held that the "Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Nurse*, 226 F.3d at 1002 n.2. In *Nurse*, the plaintiff sued the United States under the FTCA, *inter alia*, for the "negligent and intentional establishment of policies that resulted in unlawful arrests, detentions, and searches" of persons of color traveling to and from the United States. *Id.* at 1002; *see also id.* at 1000. The court found the plaintiff had sufficiently alleged that "the policy-making defendants promulgated discriminatory and unconstitutional policies which they had no discretion to create." *Id.* at 1002. As a result, the court reversed the district court's determination that the FTCA's discretionary function exception barred the plaintiff's claims. *Id.*

Notably, the Ninth Circuit has yet to "make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor."[8] *Id.* at 1002 n.2. The *Nurse* court appears to apply

---

[7] Plaintiffs' summary assertion that *Flores* required that they be detained together lacks merit. Instead, the *Flores* consent decree's requirement that minors not be housed in secure detention facilities supports Plaintiffs' separation. After J.P. was discretionarily referred for prosecution and detained in a secure facility, "it logically follows that [L.C.] could not be held with her mother." *See B.A.D.J.*, 2022 WL 11631016, at n.3.

[8] In lieu of an articulated standard, two competing theories have emerged. Some, as Plaintiffs argue, have suggested that a plausible allegation of constitutional violations is sufficient at the motion to dismiss stage. (Doc. 41 at 7.) Whereas others, as the United States contends, have held that the discretionary function exception can only be overcome when the alleged constitutional violation is clearly established. (Doc. 38 at 12.) The Court is aware that other courts in this District have evaluated a plaintiff's allegations using a plausibility standard. *See e.g., A.P.F.*, 492 F.Supp.3d 989; *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020); *F.R.*, 2022 WL 2905040.

something akin to a plausibility standard in making its determination, though:

> Because of the bare allegations of the complaint, we cannot determine at this stage of the proceedings whether the acts of the [] defendants violated the Constitution, and, if so, what specific constitutional mandates they violated. These are questions that will be fleshed out by the facts as this case proceeds toward trial. They are not questions that can always be easily answered on a motion to dismiss.

*Id.* at 1002. Accordingly, this Court finds no reason to depart from the plausible allegation standard applicable to "any other motion to dismiss on the pleadings for lack of jurisdiction" without further guidance from the Ninth Circuit on this point. *See generally Holy See*, 557 F.3d at 1073–74 (applying ordinary notice pleading standard to evaluate asserted exceptions to the Foreign Sovereign Immunity Act in an analogous context); *see also F.R.*, 2022 WL 2905040, at *5 ("If such 'bare allegations' were sufficient to overcome a motion to dismiss in *Nurse*, the Court sees no reason why Plaintiffs should be held to a higher standard here.").

Although the Court will apply *Nurse's* holding, now appears to be an appropriate juncture to explain why its application here is in tension with the text and purpose of the FTCA and its exceptions. The "purpose of [the discretionary function] exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 322 (cleaned up). Separate remedies exist outside of the FTCA for constitutional violations committed by both federal and state actors. For example, the "limited coverage of the FTCA, and its inapplicability to constitutional torts, is why the Supreme Court created the *Bivens* remedy against individual federal employees." *Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). And it is why Congress enacted Section 1983 to provide the exclusive remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution" by state actors. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quotation omitted). Thus, "Congress could have adopted

language [in the FTCA] that carved out certain behavior . . . that rises to the level of a constitutional violation. But Congress did not do so, and it is Congress that uniquely decides what should fall within the waiver of sovereign immunity." *Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021). Allowing allegations of constitutional violations to nullify the FTCA's discretionary function exception effectively transforms the FTCA into a broad *Bivens*-like remedial statute. Under the FTCA, Congress waived the United States' sovereign immunity only for common law tort claims; while the *Bivens* decision judicially established a remedy for certain constitutional violations committed by federal officials. *Linder*, 937 F.3d at 1090.[9]

Under *Nurse*, however, it appears that plaintiffs may effectively "circumvent the limitations on constitutional tort actions under *Bivens* . . . by recasting the same allegation . . . as negating the discretionary function [exception]." *Shivers,* 1 F.4th at 931. Not only does this outcome result in the FTCA being expanded to reaches Congress never intended it to go, but it also puts district courts in the awkward position of addressing claims that are better left for adjudication under *Bivens*. *B.A.D.J.*, 2022 WL 11631016, at *3 ("Constitutional violations are best reserved and analyzed under *Bivens* and its progeny."). Although the Court is skeptical of the notion that allegations of constitutional violations can negate the discretionary function exception, the Court is bound to apply *Nurse's* holding to this case.

Here, Plaintiffs assert that the United States did not have discretion to subject them to the Policy because their detention and separation violated their constitutional rights to family integrity and basic human needs while in custody. (Doc. 41 at 5–6; Doc. 35, ¶ 97.) The challenged conduct includes forced separation of parent and child, limited communication during separation, and poor conditions of confinement during detention,

---

[9] The Supreme Court has significantly limited the reach of *Bivens* by allowing only a small category of claims to be compensable. This means that "the foundation for *Bivens*—the practice of creating implied causes of action in the statutory context—has already been abandoned. And the Court has consistently refused to extend the *Bivens* doctrine for nearly 40 years, even going so far as to suggest that *Bivens* and its progeny were wrongly decided." *Hernandez v. Mesa*, --- U.S. ---, 140 S. Ct. 735, 750 (2020) (Thomas, J., concurring).

including overcrowding and lack of access to beds. (*See* Doc. 35.) For support, Plaintiffs rely on another district court's finding that the government's separation of immigrant families and related procedures used to effectuate their separation and detention likely violated the parents' due process rights. *See Ms. L. v. U.S. Immigration and Customs Enf't*, 310 F. Supp. 3d 1133, 1144–46 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019). Plaintiffs also point to a Ninth Circuit decision upholding a preliminary injunction requiring improvements to the sleeping conditions in immigration detention facilities on constitutionality grounds. *See Doe v. Kelly*, 878 F.3d 710, 721, 725 (9th Cir. 2017) ("[I]t is not unreasonable to infer that a person who has been detained in a station for over 12 hours (after having been awake for some period of time before his detention) has a right to lie down and rest, even in the middle of the day.").

The United States concedes "that district courts in this circuit have, under similar circumstances, rejected its discretionary function argument." (Doc. 38 at 14.) Notably, the United States does not cite to any decision by a court in the Ninth Circuit supporting its position. Instead, the United States urges this Court to look to other circuits that have found the discretionary function exception applicable to bar suits based on similar allegations. In time, those decisions may be proven superior to the Ninth Circuit's holding in *Nurse*. Because this Court is bound by *Nurse*, however, the Court finds that Plaintiffs have sufficiently alleged potential constitutional violations to render the discretionary function exception inapplicable at this stage of the case. *See Nurse*, 226 F.3d at 1002 ("[W]e cannot determine at this stage of the proceedings whether the acts of the [] defendants violated the Constitution, and, if so, what specific constitutional mandates they violated. These are questions that will be fleshed out by the facts as this case proceeds toward trial.") The Court's decision follows those of several other district courts in this circuit when faced with nearly identical allegations and arguments. *See A.P.F.*, 492 F. Supp. 3d at 996–97; *C.M.*, 2020 WL 1698191, at *4; *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *2-4 (D. Ariz. Mar. 31, 2022)*; F.R.*, 2022 WL 2905040, at *5; *B.A.D.J.*, 2022 WL 11631016, at *3*; Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx,

2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021); *Plascencia v. United States*, No. EDCV 17-02515 JGB SPX, 2018 WL 6133713, at *9 (C.D. Cal. May 25, 2018); *see also Ms. L.*, 310 F. Supp. 3d at 1144–46.

### D.    The FTCA's Prohibition on Constitutional Torts

The United States next argues that Plaintiffs' claims are constitutional torts, and that the FTCA does not authorize the recovery for such claims. (Doc. 38 at 20.) As the Supreme Court has noted, Congress has only waived sovereign immunity under the FTCA for common law torts, and "simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). Therefore, the "United States cannot be sued on the theory that there has been a violation of [Plaintiffs'] constitutional rights." *Roundtree v. United States*, 40 F.3d 1036, 1038 (9th Cir. 1994).

Plaintiffs have brought claims against the United States for IIED, negligence, abuse of process, and loss of consortium.[10] (Doc. 35 at 24-25.) The Court, however, must look "beyond the complaint's characterization to the conduct on which the claim is based," *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1203 (9th Cir. 2003) (cleaned up), and must "'determine whether a proposed claim is barred' by the FTCA's [constitutional] torts exception." *B.A.D.J.*, 2022 WL 11631016, at *5 (quoting *Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988)).

Here, Plaintiffs' common law claims are not constitutional torts. Although the Plaintiffs assert constitutional violations to establish that the discretionary function exception does not apply, as discussed in Part III.C., *supra*, Plaintiffs' FAC also contains plausible allegations sounding in tort. As discussed *supra* in Part III.B, Plaintiffs allege that CBP Officers placed them in a cold, windowless, crowded cell where they could not lie down or use the restroom. (Doc. 35, ¶ 54.) Plaintiffs further allege that L.C. was interviewed by a CBP officer as a minor without her mother's consent and was forcibly separated from her mother in such a manner that caused her to faint and fall face first onto the concrete. (*Id.*, ¶¶ 56-61.) Accordingly, Plaintiffs plausibly allege tortious acts and

---

[10] For the reasons discussed in Part III.B, *supra*, Plaintiffs' abuse of process claim is barred as an institutional tort under the FTCA.

omissions related to their detention and separation over which this Court has subject-matter jurisdiction. To the extent, however, that Plaintiffs' claims are based on the constitutionality of the Policy or its application to Plaintiffs, those allegations are barred by the FTCA. 28 U.S.C. § 1346(b)(1); *B.A.D.J.*, 2022 WL 11631016, at *5 (holding that "any claim based on the alleged unconstitutional separation in violation of due process rights is precluded" under the FTCA).

### E.    The FTCA's Due Care Exception

The United States argues that Plaintiffs' claims are barred by the FTCA's due care exception, which excludes "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid[.]" 28 U.S.C. § 2680(a). In evaluating the applicability of the due care exception, this District follows the two-prong test established in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005).[11] *See A.P.F.*, 492 F. Supp. 3d at 995; *C.M.*, 2020 WL 1698191, at *3; *A.I.I.L.*, 2022 WL 992543, at *4; *F.R.*, 2022 WL 2905040, at *4; *B.A.D.J.*, 2022 WL 11631016, at *4. Under *Welch*, the due care exception applies if (1) a statute or regulation "specifically pr[e]scribes a course of action for an officer to follow," and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (internal citations omitted). In other words, the due care exception only applies if an official was "reasonably executing the mandates of" a statute or regulation. *Id.* at 651. Importantly, "[a]ctions taken pursuant to executive

---

[11] The United States offers a slightly different standard, stating that the due care exception bars tort actions that test the legality of statutes and regulations. (Doc. 38 at 17.) Under that standard, the government contends that if its agents' actions are "authorized by statute or regulation, the exception for actions taken while reasonably executing the law applies." (*Id.* (citing *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985).) Other courts in this district have rejected an identical argument, holding that *Borquez* does not apply to challenges to the Trump Administration's family separation and zero-tolerance policies. *See C.M.*, 2020 WL 1698191, at *3 n.2; *see also A.P.F.*, 492 F.Supp.3d at 995 n.2; Those courts distinguished *Borquez* because there, "plaintiffs' claims 'represent[ed] a challenge to the statutory authority of the government. . . .'" *C.M.*, 2020 WL 1698191, at *3 n.2 (quoting *Borquez*, 773 F.2d at 1052) (alterations in original); *A.P.F.*, 492 F.Supp.3d at 995 n.2. In contrast, here, "Plaintiffs are not challenging a statute's grant of authority to the government to separate Plaintiffs; they are seeking damages for harm caused by the execution of an executive policy. *Borquez* therefore does not apply." *A.P.F.*, 492 F.Supp.3d at 995 n.2.

policy are not shielded by the due care exception." *A.P.F.*, 492 F. Supp. 3d at 996.

The United States avers that the due care exception applies because:

> [T]he United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that J.P. was unable to provide care and physical custody for L.C. The government made the discretionary decisions to refer J.P. for criminal prosecution and to detain her in a secure immigration detention facility separate from L.C. Once those protected discretionary determinations had been made, the [Trafficking Victims Protection Reauthorization Act ("TVPRA")] required that L.C. be transferred to ORR custody. The enforcement of that statutory command cannot form the basis of an FTCA claim.

(Doc. 38 at 17.) The United States' reliance on the mandate of Section 1232(b)(3) has been uniformly rejected by many courts in this district and others in this circuit.[12] *See A.P.F.*, 492 F. Supp. 3d at 995–96; *C.M.*, 2020 WL 1698191, at *3; *A.I.I.L.*, 2022 WL 992543, at *4–5; *B.A.D.J.*, 2022 WL 11631016, at *4; *Nunez Euceda*, 2021 WL 4895748, at *4. Those decisions hold that the exception cannot apply because the United States does not cite any statute or regulation that required Plaintiffs to be separated upon arrival to the United States prior to either of them being charged with a crime. Instead, the United States argues that because J.P. was "amenable to prosecution" she was "unable to provide care and physical custody for L.C." (Doc. 38 at 8-9.) That argument has been rejected because those courts found that the relevant government agents were acting pursuant to executive policy, not a statutory or regulatory mandate. *See A.P.F.*, 492 F. Supp. 3d at 995–96; *C.M.*, 2020 WL 1698191, at *3; *A.I.I.L.*, 2022 WL 992543, at *4–5.[13]

---

[12] 8 U.S.C. § 1232(b)(3) provides: "Except in the case of exceptional circumstances, any department or agency of the Federal Government that has an unaccompanied alien child in custody shall transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child."

[13] One decision, *F.R.*, found that the United States satisfied the first prong of *Welch* by asserting the applicability of Section 1232(b)(3) without weighing in on the issues identified by the other courts in this district. 2022 WL 2905040, at *4. Ultimately, the court

- 18 -

Regardless, "Plaintiffs correctly note that the [g]overnment failed to address, beyond using conclusory statements, how it took due care in following the dictates of the statute[] it cites." *B.A.D.J.*, 2022 WL 11631016, at *4; (*see also* Doc. 41 at 21-22). Plaintiffs have plausibly alleged that the officers who detained and separated them did not act with due care and Defendants have not offered any arguments to the contrary. At the pleading stage, the Court need not decide whether the TVPRA qualifies as a statute or regulation that "specifically pr[e]scribes a course of action for an officer to follow," because even assuming that it does, the United States has not met its burden to establish that "the officer[s] exercised due care in following the dictates of" the TVPRA. *Welch*, 409 F.3d at 652.[14]

### F.    Whether Plaintiffs' Claims are Prohibited Under Arizona Law

The United States also argues that "Plaintiffs' claims should be dismissed because they arise from their lawful detention and are therefore barred under [Arizona] law." (Doc. 38 at 23.) The United States relies upon *Muscat by Berman v. Creative Innervisions LLC*, 418 P.3d 967 (Ariz. Ct. App. 2017), in which the Arizona Court of Appeals held that a plaintiff's alleged injuries were barred under Arizona law because the "injuries arise only out of a legally imposed incarceration, [and plaintiff] alleges no injury that is distinct from the consequences of his prison sentence." *Id.* at 199. The United States likens this case to *Muscat* and argues that Plaintiffs' injuries derive from their lawful detention after their illegal entry into the United States. (Doc. 38 at 23.) The Court is not convinced that *Muscat*, by itself, establishes that Arizona law precludes Plaintiffs' claims. Notably, though J.P. was amenable to criminal prosecution for illegally entering the United States, immigration arrests and detentions are civil in nature. *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984). Indeed, Plaintiffs allege that J.P. was never charged with a criminal offense. (Doc. 35, ¶ 72.) As *Muscat* appears to be limited to the context of criminal detentions, the Court

in *F.R.* found that the United States failed to establish due care in executing the statutory mandate based on circumstances not present in this case. *Id.*

[14] "Nothing in this Order precludes the United States from reasserting this exception at a later stage of litigation if the facts unearthed during discovery prove that the relevant government employees did, in fact, exercise due care in following their statutory directives." *F.R.*, 2022 WL 2905040, at *4 n.3.

finds that the United States has failed to establish that Plaintiffs' claims are precluded under Arizona law.

### G.    Rule 12(b)(6)

Finally, the United States argues that Plaintiffs fail to state an actionable negligence claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 38 at 24.) A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The Court must accept material allegations in the Complaint as true and construe them in the light most favorable to Plaintiffs. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).

To sufficiently allege an Arizona law negligence claim, "'a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages.'" *CVS Pharmacy, Inc. v. Bostwick ex rel.*, 494 P.3d 572, 578 (Ariz. 2021) (quoting *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827–28 (Ariz. 2018)).

The United States first argues that Plaintiffs fail to "identify the source of Arizona law" imposing a duty on the government.[15] (Doc. 38 at 24-25.) Whether the United States had a duty to the Plaintiffs "'is a threshold issue; absent some duty, an action for negligence cannot be maintained.'" *Lee*, 2020 WL 6573258, at *4 (quoting *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007)). "Duty is not presumed; in every negligence case, the plaintiff bears

---

[15] The United States cites to *Delta Savings Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) for the proposition that "any duty that the United States owed to plaintiffs must be found in . . . state tort law." (Doc. 38 at 25.) The *Delta Savings Bank* decision and those cited therein are addressing the duty of care required for FTCA actions arising from allegations of negligence per se, not ordinary negligence. Thus, that decision and those that it relies on are inapposite.

the burden of proving the existence of a duty." *Quiroz*, 416 P.3d at 827. "Duty in Arizona negligence law is based on 'recognized common law special relationships or relationships created by public policy.'" *B.A.D.J.*, 2022 WL 11631016, at *6 (citing *Quiroz*, 416 P.3d at 829). "[T]he primary sources for identifying public policy are state and federal statutes." *Quiroz*, 416 P.3d at 827. "In the absence of such legislative guidance, duty may be based on the common law—specifically, case law or Restatement sections consistent with Arizona law." *Quiroz*, 416 P.3d at 827.

The Court finds that Plaintiffs have sufficiently alleged facts to support a duty of the United States to care for its detainees while in custody. As an example, Plaintiffs allege that DHS employees were "responsible for supervising and managing detained individuals at CBP and ICE facilities," including those facilities where J.P. and L.C. were detained and separated. (Doc. 35, ¶ 20). Arizona law recognizes that public policy requires a duty of care "in situations involving involuntary detainment or commitment." *Harrelson v. Dupnik*, 970 F.Supp.2d 953, 974 (D. Ariz. 2013) (citing *Demontiney v. Desert Manor Convalescent Center, Inc.*, 695 P.2d 255 (Ariz. 1985)).

The United States further argues that "the Complaint is void of specific factual allegations that any particular federal employee 'was negligent in performing his or her responsibilities' relating to the alleged detention and separation, 'or how any of the particular employee's negligent acts or omissions contributed' to Plaintiff's alleged injury." (Doc. 38 at 25 (quoting *Lee*, 2020 WL 6573258, at *6).) As discussed above in Part III.B *supra*, although Plaintiffs do not refer to the CBP officers by name, the United States' pre-discovery complaints about Plaintiffs' inability to name the specific actors is premature. *See Twombly*, 550 U.S. at 555. Plaintiffs allegations regarding the manner in which they were detained and separated by CBP officers are sufficient to state a claim for negligence under Arizona law. (Doc. 35, ¶¶ 54, 56-61, 56-61); *see Lee*, 2020 WL 6573258, at *3 ("But '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'") (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted)).

IV.   **CONCLUSION**

Accordingly,

**IT IS ORDERED granting in part and denying in part** the United States' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 38) as follows:

1.     Plaintiffs' claim for abuse of process is dismissed as barred by the FTCA's prohibition on institutional torts.

2.     To the extent Plaintiffs assert claims for negligence, IIED, and consortium based on conduct of the United States, the government, or unidentified "high-ranking officials" generally, those claims are barred by the FTCA's prohibition on institutional torts.

3.     To the extent Plaintiffs' claims attempt to challenge the constitutionality of the Trump Administration's immigration enforcement policies and priorities, those claims are barred by the FTCA's prohibition on constitutional torts.

4.     The motion is denied in all other respects.

Dated this 28th day of June, 2023.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge